FARRIS *v.* BELL.

Opinion delivered July 4, 1927.

1. LOST INSTRUMENTS—SUFFICIENCY OF EVIDENCE.—In a suit to establish a lost deed, evidence of the execution to plaintiff of the deed claimed to have been lost must be clear, conclusive and satisfactory in order to warrant a reversal of the decree dismissing the complaint for want of equity.

2. LOST INSTRUMENTS—EVIDENCE.—In determining whether a deed claimed to have been lost was in fact executed, the court may consider the duration of plaintiff's possession of the land, its value, whether it was held adversely, and all the surrounding circumstances.

3. LOST INSTRUMENTS—SUFFICIENCY OF EVIDENCE.—In a suit to establish a lost deed, where plaintiff had possession of the property continuously for almost 30 years, and had paid taxes thereon, he is *held* entitled to have the deed restored under the evidence.

Appeal from Ouachita Chancery Court, First Division; *J. Y. Stevens,* Chancellor; reversed.

*H. E. Meek* and *Powell, Smead & Knox,* for appellant.

HUMPHREYS, J.   Appellant instituted suit against appellee in the first division of the chancery court of Ouachita County to restore a lost deed to the SE¼ section 26, township 15 south, range 15 west, in said county, alleged to have been executed in or about the year 1897, by Ida Bell and her husband, John Bell, to appellant on account of services rendered by appellant to Mrs. Bell's father and his family, as well as to Mrs. Bell's family. In addition to the allegations of the execution and loss of the deed, the continuous occupancy of the land and payment of the taxes, appellant alleged that appellee procured an affidavit from herself and daughter on August 19, 1922, disavowing the ownership of the land upon representation that it was necessary to sign such an affidavit in order to invalidate an oil lease which appellant had made to H. C. Cade, which affidavit was recorded on the deed records of said county.

The prayer of the complaint was for the cancellation of the affidavit and the restoration of the deed.

Appellee filed an answer, denying the material allegations of the complaint. She admitted that appellant and her daughter made the affidavit disavowing any interest in the land, but denied that it was procured through the misrepresentation that it was necessary for them to sign it in order to invalidate the lease appellant had made to H. C. Cade, and alleged that it was executed by appellant in order to clear the title of any claim she might assert on account of continued possession and the payment of taxes for a long period of years, so that appellee could make an oil lease thereon to John Seips, who had offered her $2,000 in cash and certain royalties for an oil lease on the forty.

The cause was submitted to the court upon the pleadings and testimony adduced by the respective parties, which resulted in a decree dismissing appellant's complaint for the want of equity, from which is this appeal.

The following facts appear to be undisputed in the record: Appellant is a negro woman, about eighty years of age, who was for many years the family servant of Dr. A. P. Farris, who owned a large amount of land in said county. Dr. Farris was the father of several children, including Ida, who married J. F. Bell. Appellant was a servant in the Farris home when Ida was born, and was with his wife when his last daughter, Carrie, was born. Mrs. Farris died when Carrie was only five months old, and Dr. Farris prevailed upon appellant to rear the baby girl by promising her a home forever. During Dr. Farris' lifetime appellant occupied a place owned by him a mile from the forty-acre tract in question. The doctor agreed to convey her the forty upon which she was residing at the time of his death, but he died before he did so. After his death his lands were partitioned amongst his children, the forty upon which appellant resided being assigned to Lucian Farris, and the forty in question and the forty just north of it being assigned, with other lands, to appellee. After the lands were partitioned, appellant moved onto the forty-acre tract in question in the year 1897, by consent of appellee, where she and her family

have continuously resided and upon which she has paid all of the taxes.

The testimony is conflicting relative to the issue of the execution of the deed and the purposes for which the affidavit was made. Appellant testified that she moved upon the forty-acre tract in question at the direction of Mrs. Ida Bell, in the winter after the lands of Dr. Farris had been divided among his children, and that, during the time that she was making her first crop, Mr. Bell brought a deed to her for it, signed by Mrs. Ida Bell, J. F. Bell and Carrie Farris, who was about fifteen years old when she moved onto the forty; that the deed was made by and signed before Joe F. Cook, and that it was filled out on a blank with ink; that she put the deed in the bottom of her trunk, where it remained for years and until it disappeared; that she paid the taxes every year and wrapped the tax receipts around the deed; that Mrs. Bell told her to keep the taxes paid and never to mortgage the land to any one; that she bought the forty-acre tract north of her forty from Mrs. Ida Bell and her husband, and conveyed it to her son, Lucian Farris; that she gave some kind of an oil lease to H. C. Cade; that Mrs. Ida Bell told her to sign an affidavit so as to get H. C. Cade off the record, and she would lease the forty of John Seips for $2,000 and give her $1,000 and all the royalty, and make her a deed in the place of the one that was lost; that she signed the affidavit not knowing its contents, received the $1,000, but when Mrs. Bell tendered her a deed to the forty, it only conveyed a 1/32 royalty for the oil, and that, upon advice of her son, she refused to accept the deed, and brought this suit.

Stella Arnold, a daughter of appellant, testified that she married about six years prior to the time she testified, and built a house upon the forty, in which she and her husband resided; that she lived upon the land with her mother nearly all her life, and was present and signed her mother's name to the affidavit on the 19th day of August, 1922, without reading it, on representation that its purpose was to get H. C. Cade off the record.

Sam Farris, a son of appellant, 37 years of age, testified that he had resided at home with his mother most of the time, and had seen the deed from appellee and her husband to his mother many times, and that it was lost; that she kept it in her trunk; that Mr. Gray Rogerson, a white man, owned a forty adjoining his mother's forty; that he was helping Mr. Rogerson build a division fence between the two forties, and Mr. Rogerson requested him to get the deed so that he could be certain about the fence line; that he got the deed, and Mr. Rogerson examined it and found out what he wanted to, after which witness took the deed back and put it in the trunk; that the deed had been lost about ten years.

Lucian Farris, another son of appellant, who was 49 years of age, testified that Mr. and Mrs. Bell conveyed the southwest quarter of the southeast quarter of said section, township and range to his mother after they had lived on the forty awhile; that it adjoined the forty occupied by Mr. and Mrs. Bell; that his mother kept the deed in her trunk, where he had seen it a hundred times; that in 1900 his mother purchased the forty north of her forty from Mr. and Mrs. Bell, and conveyed it to him in 1909 for having remained at home with her and having helped pay off the debts; that, when his mother conveyed his forty to him, he took the deed Mr. and Mrs. Bell gave his mother to his forty and his deed to his home and produced and attached them as exhibits to his testimony.

Gray Rogerson, a white man, who owned and resided upon a forty-acre tract adjoining the forty claimed by appellant, testified that he wanted to build a fence between the forty he owned and the forty upon which appellant and her husband resided; that appellant's boy, Sam, was helping him, and he sent him after his father and the deed; that the boy returned with the deed, but said that his father was not at home; that his purpose was to see whether appellant owned the forty and to have an agreement about the fence line; that witness examined the deed particularly with reference to the description,

and knows that the southwest quarter of the southeast quarter of said section, township and range was described therein; that it could not have been a deed to the north of appellant, else it would not have joined his land; that the deed was acknowledged before Joe F. Cook.

Joe F. Cook testified that he lived in the neighborhood of the southwest quarter of the southeast quarter, section 26, township 15 south, range 15 west, in Ouachita County, from 1863, except a short time, until 1917, when he moved to Camden; that witness was justice of the peace for that township for about twenty years previous to 1906; that he was well acquainted with both appellant and appellee; that he was appointed one of the commissioners to divide Dr. Farris' land between his heirs, and that appellant and her husband were living on the forty-acre tract which was assigned to Lucian Farris in the partition; that Lucian was not willing for them to remain on the forty assigned to him, so they moved onto the southwest quarter of the southeast quarter of section 26, township 15 south, range 15 west, which had been assigned with their lands to appellee; that, some time after they moved onto that forty, Mrs. Ida Bell and her husband called him to their home and stated that appellant had been promised a home by Dr. Farris, and that they wanted her to live as close to them as possible, and asked him to prepare a deed from them to appellant covering that forty, stating that it had a house upon it and some of the land was cleared; that the forty they instructed me to make a deed to was adjoining the forty upon which they lived themselves; that witness filled out a blank deed, describing the forty referred to, which was signed and acknowledged by Mr. and Mrs. Bell; that appellant was present at the time the deed was written, and possibly had some of her children with her; that he has no distinct recollection now of the particular description he inserted in the deed, further than remembering that the forty was north of the forty upon which Mrs. Bell resides, and that, according to the plat

before him, the description was as given above; that he is certain that Mrs. Bell directed him to make a deed to appellant to the forty right north of her home; that in the conversation one reason assigned by Mrs. Bell for wanting to make the deed to appellant was the fact that she had raised her sister; that witness is able to tell from the map that the deed made at that time was to the northwest quarter of the southeast quarter of said section, township and range.

Mrs. Ida Bell, appellee herein, testified that at the time her father, Dr. Farris, died, appellant was living on a forty that was given in the partition of the lands to witness' half brother, Lucian Farris; that, after she was dispossessed as a result of the division of the lands, appellant moved into a little house on witness' land, which is the subject-matter of this lawsuit; that witness told appellant she could move on the forty and live there all of her life if she would pay the taxes upon it; that appellant bought the forty just north of the forty upon which she lived, and subsequently conveyed it to her son, Lucian; that she conveyed the north forty to appellant in 1900, but never at any time conveyed any other land to her; that Mr. Cook never wrote any other deed than the one in 1900 from them to appellant for the forty north of where appellant resided; that appellee never made a deed to the southwest quarter of the southeast quarter of said section, township and range to appellant until after oil was discovered in Ouachita County, which deed appellant refused to accept; that oil was discovered in Ouachita County in 1922; that a negro by the name of H. C. Cade procured some kind of an option from appellant on the southwest quarter of the southeast quarter of said section, township and range, and proposed to witness that, if she could straighten out the option and get appellant as much as $1,000 in cash and deed her the land, witness might have the royalty; that witness accepted the proposition, and agreed in addition to give her a 1/32 royalty, provided she would raise no question or trouble about the title to the land; that, pursuant to the arrange-

ment, she sold a lease to John Seip for $2,000 in cash and reserved the usual royalty; that, before Seip would buy the oil lease, he required that appellant make an affidavit stating that she had no interest in the land; that she had paid the taxes thereon in lieu of rent to appellee; that she had nothing to do with the preparation or the execution of the affidavit; that, after Mr. Seip accepted the lease and paid witness $2,000, she divided it with appellant and tendered her a deed to the land and 1/32 of the royalty, which she refused.

John Seip testified that he discovered that H. C. Cade had obtained an option for about three years from appellant on the southwest quarter of the southeast quarter of said section, township and range, but that the title to said land was in Mrs. Bell; that, after making that discovery, he negotiated with Mrs. Bell for several days for a lease on the land; that he finally paid her $2,000 cash and certain oil royalties for the lease, on condition that appellant make an affidavit that she had no interest in the land and that she had paid the taxes on the land in lieu of rent to Mrs. Bell; that appellant and appellee had some kind of trade between themselves, of which he was not cognizant; that he does not remember the particulars with reference to the preparation of the affidavit nor whether he received it from appellant or appellee; that he was in the bank when Mrs. Bell paid appellant $1,000, and remembers that she accepted it contrary to the advice of her son.

The affidavit referred to by the several witnesses is as follows: "Louis Farris and Stella Arnold state on oath: We are over the age of twenty-one years, resident of Ouachita County, Arkansas, and each have lived in said county and State for more than 25 years, and are well acquainted with the southwest quarter of the southeast quarter section 26, township 15 south, range 15 west, located in Ouachita County, Arkansas. We have known this land for at least 25 years. During that time we have known it by it being the property of and belonging to John Bell and his wife, Ida Bell. We have lived upon this

land for a number of years, as tenants of John Bell and Mrs. Ida Bell. We have never heard any one make claim to this property except them. During the time we have lived upon said land we have always paid rentals to Mrs. Ida Bell, and we recognize the land as being her property. It is our understanding that she has paid all taxes assessed against this land for several years past.

"We have no interest in the purposes for which this affidavit is made."

In order for appellants to obtain a reversal of the decree the record must reflect clear, conclusive and satisfactory proof that appellee executed the deed to her, conveying the southwest quarter of the southeast quarter, section 26, township 15 south, range 15 west in said county, which she lost. *Jacks* v. *Wooten,* 152 Ark. 515, 238 S. W. 784; *Wasson* v. *Walker,* 158 Ark. 4, 249 S. W. 29; *Erwin* v. *Kerrin,* 169 Ark. 183, 274 S. W. 2; *Langston* v. *Hughes,* 170 Ark. 272, 280 S. W. 374. In determining whether the deed claimed to have been lost was executed, the duration of the possession of the land, its value, whether held adversely, and all the surrounding circumstances, may be considered by the court. *Carpenter* v. *Jones,* 76 Ark. 163, 88 S. W. 871; *Jacks* v. *Wooten,* 152 Ark. 515, 238 S. W. 784.

Tested by these rules we think the decree is contrary to a clear preponderance of the testimony. The testimony of the parties bearing upon the execution of the deed is in irreconcilable conflict, but appellant is corroborated by her daughter, two sons and two white men who have no interest whatever in the result of the suit. Gray Rogerson examined the deed particularly with reference to the description, and says he cannot be mistaken because the forty described in the deed was adjoining his land, and had the description covered the north forty it would not have joined his land. Joe A. Cook was the justice of the peace in the township, and testified just as positively as one well could that the description in the deed was the southwest quarter of the southeast quarter of said section, township and range. He based his testi-

mony solely upon the maps he had before him and the location of the said forty with reference to the forty where Mrs. Bell herself lived. He testified that Mrs. Bell assigned as a reason for making the deed to appellant, the promise her father had made to her, the services she had rendered the family, especially in rearing the youngest child, and her desire to have her close to her so that she could render services to the family in the future. The great length of time, however, appellant occupied the land and paid the taxes thereon is the most potent circumstance corroborating appellant's testimony to the effect that the land was conveyed to her. We attach little importance to the affidavit made by appellant, as the facts it purports to state are untrue according to the undisputed evidence. Appellant never paid any rent to appellee, and nothing occurred between them during her occupancy of twenty-eight years that indicated the relationship of landlord and tenant. Appellee never paid any of the taxes after appellant moved upon the land. Both appellee and John Seip remember little about who prepared the affidavit and who procured the signature of appellant thereto. They rather disclaim any immediate connection with it. Appellant and her daughter say that it was signed hurriedly under misapprehension on their part of its contents.

On account of the error indicated the judgment is reversed, and the cause is remanded with directions to grant the prayer of the complaint.