## JACKS *v.* WOOTEN.

### Opinion delivered March 20, 1922.

1. LOST INSTRUMENTS—SUFFICIENCY OF PROOF.—In a suit to establish title to land where plaintiffs. rely upon a deed alleged to have been lost, and are suing the person alleged to have executed the deed, the burden is on the plaintiff to prove the facts alleged upon which they rely for title by clear and satisfactory evidence.

2. LOST INSTRUMENTS—EVIDENCE.—In determining whether a deed claimed to have been lost was executed, the court may consider how long the parties asserting the claim had been in possession of the land, its value, whether the land had been held adversely to such claim, and all the surrounding circumstances.

Appeal from Phillips Chancery Court; *A. L. Hutchins,* Chancellor; affirmed.

#### STATEMENT OF FACTS.

On the 5th day of November, 1917, S. A. Wooten and Cora F. Wooten brought suit in equity against Lula B. Jacks to establish title to an undivided three-eighths interest in a lot in the city of Helena, Ark., claimed by a deed alleged to have been lost and never recorded.

The plaintiffs allege that the deed was executed to Cora F. Wooten by Lula B. Jacks in February, 1895, and that the plaintiffs have been in possession of said lot since that time; that said deed has been lost, and after a diligent search plaintiffs have been unable to find it.

The prayer of the complaint is that Lula B. Jacks be required to execute a new deed to Cora F. Wooten, or that she be enjoined from asserting any title to the said lot, and that the title to he same be confirmed in S. A. Wooten, the present owner.

Lula B. Jacks defended the suit on the ground that she had the legal title to said three-eighths interest of

said lot and filed a cross-bill in which she asked for an accounting of the rents and profits from the plaintiffs.

It appears from the record that Cora F. Wooten, Lula B. Jacks, and Z. D. Agee were partners under the firm name of Wooten, Jacks & Agee. The firm was organized in the early part of 1892, for the purpose of conducting a grocery and supply business. Cora F. Wooten and Lula B. Jacks each had a three-eighths interest and Z. D. Agee had a one-fourth interest in the business. S. A. Wooten was the agent of his wife, and Tom Jacks was the agent of his wife in running the business. On the 11th day of May, 1892, E. C. Hornor executed a deed to Cora F. Wooten, Lula B. Jacks, and Z. D. Agee, Jr., to said lot. Cora F. Wooten and Lula B. Jacks each took an undivided three-eighths interest in the lot, and Z. D. Agee, Jr., took an undivided one-fourth interest therein. On the 10th day of June, 1892, they executed a mortgage to the People's Building & Loan Association to secure the sum of $4,000 which they used in erecting a storehouse on said lot. Subsequently on the same day they executed a mortgage to E. C. Hornor, to secure him for the balance due on the purchase price. A store building was erected on the lot and rented out. The lot in question was situated in the same block in which the parties conducted their grocery and supply business, but they continued to occupy the same house and rented out the building which they erected after purchasing the lot from Hornor. The mortgage to the Building & Loan Association was paid and marked satisfied in full on the record on the 14th day of February, 1899. The mortgage to Hornor was marked satisfied on the record on the 1st day of December, 1892.

Lula B. Jacks sold her interest in the business to Cora F. Wooten in the early part of 1895 and retired from the firm. Cora F. Wooten and her husband remained in possession of the lot and store building in question from that time until the present time. They

have paid all the taxes and collected all the rents on the same. Thus far the facts are undisputed.

According to the testimony of S. A. Wooten, he bought out the interest of Z. D. Agee in the business, including his interest in the house and lot in controversy, between fifteen and twenty years ago. After that time Agee left the country, and the plaintiffs, although having made a diligent search for him, have been unable to locate him and take his deposition. At the time Lula B. Jacks sold her interest in the business to Cora F. Wooten and retired from the firm, she executed a deed to her interest in said lot to Cora F. Wooten. At that time the courthouse was situated out on the hill in Helena, and it was the custom of the firm to mail instruments which it wished to have recorded, to the clerk. S. A. Wooten thinks he mailed the deed from Lula B. Jacks and his wife to the clerk at the courthouse to be recorded. He has made a diligent search for the deed, and has been unable to find it. Subsequently Cora F. Wooten executed a deed to him to the house and lot. They paid $1,800 for the lot and the house cost $4,000. This was one of the first houses built on Cherry Street. At first the property rented for $35 per month. Then the rent was increased to $60 and finally to $150 per month. Wooten paid off the mortgage to the building & loan association at the rate of $53 per month. In 1895 a great many letters containing mail to the officers at the courthouse were opened and stolen by the janitor.

C. C. Agee, a brother of Z. D. Agee, Jr., testified that he had not seen his brother in fifteen years; that neither he nor his mother knew where Z. D. Agee, Jr., was and had not heard from him in five years.

According to the testimony of O. C. Rayburn, he went to Lula B. Jacks for the purpose of getting her to sign a quitclaim deed to Cora F. Woooten to her interest in the lot in controversy. The reason was that S. A. Wooten had disposed of the property, and in making the abstract of title it had been discovered that the deed from

Lula B. Jacks to Cora F. Wooten was lost and could not be found. Lula B. Jacks read over the deed and told Rayburn that if the deed was for him she would sign it, but inasmuch as it was to Wooten she had a good mind to make him pay her $1,000. She finally increased this amount to $5,000 and then refused to sign the deed at all.

According to the testimony of T. M. Jacks, the husband of Lula B. Jacks, his wife never conveyed the lots in controversy to Cora F. Wooten. He represented his wife when she sold her interest in the business, and the lot in controversy was not included in the sale. S. A. Wooten had been managing the property since his wife had retired from the firm. The agreement was that Wooten was to take charge of the storehouse on the lot in question, pay the building & loan dues, taxes, insurance, and repairs until the mortgage debt was paid, and that he should be allowed a reasonable compensation for his services; that he had approached Mr. Wooten some half a dozen times about the matter, and that Wooten's answers were always indefinite; that he had not brought up the subject with Wooten for three or four years.

On cross examination the witness stated that he and his wife were living in Helena in 1892, and they had lived there ever since, except for two years in 1902, 1903 or 1904. Jacks asked Wooten about the cost of the improvements ten or fifteen years ago. He considered that his wife would have $8,000 or $10,000 interest in the property after all the mortgage indebtedness had been paid. The property has become very valuable.

According to the testimony of Lula B. Jacks, her husband represented her in conducting the grocery and supply business and in selling out her interest in the same. She had instructed her husband to press her claim for settlement against S. A. Wooten before this suit had been brought. She denied that she made the statements to Rayburn testified to by him. In this respect she was cor-

roborated by her daughter, who testified that she was present, and that her mother did not make the statements testified to by Rayburn.

The chancellor found the issues in favor of the plaintiffs. It was decreed that the prayer of the plaintiffs' petition be granted, and that the title to said lots be confirmed in the plaintiffs.

It was further decreed that the defendant's cross-complaint be dismissed, and that the defendant be enjoined from asserting any title to said lots.

To reverse that decree the defendant has duly prosecuted an apeal to this court.

*R. J. Williams,* for appellant.

The original deed was to the parties as individuals and not as members of a partnership, and the property was not bought with partnership funds, therefore appellee did not become the owner thereof by reason of his purchase of appellant's interest in the partnership.

Parol testimony to establish the loss of a deed must be clear and satisfactory. No vague, uncertain recollection concerning its stipulation ought to supply the place of the written instrument itself. 13 Ark. 496. The same principle applies as in cases of reformation of a deed or written instrument, and the rule is clearly set forth in the following cases: 81 Ark. 420; 71 Ark. 614; 75 Ark. 72; 120 Ark. 320; 80 N. W. 91; 106 N. W. 505.

Appellee cannot plead the statute of limitation, as under the married woman's act of 1917, she was given one year after its passage to institute suit, which was done.

Neither was she guilty of laches.

*John I. Moore, Jacob Fink* and *John I. Moore Jr.,* for appellee.

Appellant is barred by laches from recovery. 114 Ark. 359; 55 Ark. 85; 7 How. 234; 1 How. 189.

The findings of a chancellor will be sustained unless there is a clear preponderance of the evidence against

such finding. 97 Ark. 537; 72 *Id.* 305; 75 *Id.* 52; 90 *Id.* 426; 75 *Id.* 72; 96 *Id.* 171; 101 *Id.* 522; 105 *Id.* 512; 143 *Id.* 319; 144 *Id.* 573; 144 *Id.* 50; 146 *Id.* 99; 145 *Id.* 247.

HART, J. (after stating the facts). We are of the opinion that the decision of the chancellor is correct. The plaintiffs based their rights to recover on the alleged fact that Lula B. Jacks executed to Cora F. Wooten a deed to her three-eighths interest in the lot in controversy and the deed had been lost before it had been filed for record. The chancellor granted the relief prayed for in the complaint of the plaintiff, and the title was confirmed in S. A. Wooten, who had in the meantime procured a deed to said lot from Cora F. Wooten. The defendant was enjoined from interfering with the title of the plaintiffs, and her cross-complaint in which she asked for an accounting for rents and profits was dismissed for want of equity. The rights of the plaintiff are based solely on the deed alleged to have been lost, and they are suing the person who is alleged to have executed the deed. Under these circumstances it devolved upon plaintiffs to prove the facts alleged upon which they relied for title by clear and satisfactory evidence. *Kenady* v. *Gilkey,* 81 Ark. 147.

In determining whether a deed claimed to have been lost was executed the court might consider how long the parties asserting the claim had been in possession of the land, its value, whether the land had been held adversely to such claim, and all the surrounding circumstances. *Carpenter* v. *Jones,* 76 Ark. 163.

Tested by this rule, we think the plaintiffs have established the fact of the execution and loss of the deed by clear and convincing evidence. It is true that the testimony of the parties themselves is in direct and irreconcilable conflict; but we think the testimony of the plaintiff, S. A. Wooten, is corroborated by the attending circumstances. The undisputed evidence shows that, after Lula B. Jacks sold her interest in the firm to Cora F. Wooten, her husband, who had been managing her interest in the firm, took no further part in renting or col-

lecting the rents on the house and lot in question. Wooten paid the building and loan dues and the taxes, which amounted to more than the rent. The mortgage to the building and loan company was satisfied of record on the 2nd day of February, 1899. The mortgage to Hornor was satisfied of record on December 1, 1892. Since that time S. A. Wooten has continued to collect the rents and paid the taxes. He says that no claim was asserted by the defendant until she was requested to make a quitclaim deed in place of the lost deed.

It is true that this is denied by the defendant, but it is certain that the defendant took no active steps to have an accounting of the rents and profits. According to her evidence, the defendant and her husband have lived in the city of Helena within five or six blocks of the house and lot in controversy during all this time, except for a period of two years. The rental value of the property increased from $35 to $60 and then $75 per month. Finally the rent went up to $150 per month. According to the testimony of the husband of the defendant, they knew that the value of the property had greatly increased, and they must have known that its rental value had also greatly increased. Their silence in permitting the plaintiffs during all these years to collect the rents and manage the property as their own is a strong circumstance tending to show that the defendant had parted with her interest in the property. It is not as if she had been living at another place and kept in ignorance of its rental value. She knew what the property and the house on it had cost. She must have known that the mortgage indebtedness had been paid years ago. Her failure to assert any claim until she was asked to make a quitclaim deed to clear the title after Wooten had bargained to sell the lot can be explained only on the theory that she had parted with her title to the property.

It was shown by the plaintiffs that a great deal of mail was opened by the janitor and destroyed during the period of time that the deed would have been sent to the

courthouse to be recorded. This accounts for the loss of the deed, and it is not unreasonable that the plaintiffs failed to know that the deed had not been returned to them after they had mailed it to the clerk's office to be recorded.

It follows that the decree will be affirmed.