WASSON v. WALKER.

Opinion delivered March 19, 1923.

1. LOST INSTRUMENTS—WEIGHT AND SUFFICIENCY OF PROOF.—Where a contract alleged to have been lost related to and affected the title to land, its execution and contents must be established by clear and decisive evidence.

2. LOST INSTRUMENTS—SUFFICIENCY OF EVIDENCE.—Evidence *held* insufficient to establish execution and contents of an alleged lost instrument.

Appeal from White Chancery Court; *John E. Martineau,* Chancellor; reversed.

*Brundidge & Neelly,* for appellant.

The findings and decree of the chancellor are clearly against the preponderanace of the testimony. Appellee pleads a peculiar and unusual contract in defense of a suit to collect a vendor's lien note which he admits having executed. A contemporaneous contract, or an alleged copy, the original being lost, whereby appellant guaranteed that he would make a profit on the sale of the farm in one year. Otherwise if appellee failed to sell for more than the purchase price agreed to be paid to appellant, that appellant would refund the cash payment and appellee should have the farm free of rent. The execution of the notes was a new contract made afterwards, into which the whole negotiations were merged, whose terms cannot be changed, varied or contradicted by parol testimony. *Smith* v. *McLaughlin,* 120 Ark. 366. Evidence to overcome written instrument must be clear, unequivocal and decisive. *McCracken* v. *McBee,* 96 Ark. 26.

*Miller & Yingling,* for appellee.

A casual reading of the record will disclose that the finding and judgment of the chancellor are not against the preponderance of the testimony, and, under the well settled rule, they will not be disturbed on appeal. *Teague* v. *Hutto,* 132 Ark. 80; *Satterwhite* v. *Bledsoe,* 149 Ark. 670; *Ford* v. *Miller,* 149 Ark. 443; *Wright* v. *Bennett,* 150 Ark. 154; *Williams* v. *Benton,* 148 Ark. 654; *Nelson*

v. *Murray,* 145 Ark. 247. Appellee's defense is based upon a valid written instrument which transformed the transaction into a conditional sale, and, being lost, could be established by parol testimony without violating the rule against the introduction of parol testimony to change, contradict or vary the terms of a written instrument. 2 Devlin on Deeds, 1541, § 845, also p. 2101, § 1103; *Conway* v. *Alexander,* 7 Cranch 218, U. S. 3 L. ed. 321. The decree should be affirmed.

McCULLOCH, C. J. Appellant owned a farm in White County containing 118 acres, and on December 26, 1919, sold and conveyed it to appellee for the sum and price of $7,670, of which $1,000 was paid in cash by appellee, and notes were executed, payable annually, for the remainder. After the maturity of the first note appellee refused to pay the same, and this action was instituted by appellant in the chancery court of White County against appellee to foreclose the vendor's lien.

Appellee filed an answer and cross-complaint, admitting the purchase of the land and the failure to pay the matured installment represented by the first note, but setting forth a contemporaneous contract in writing, alleged to have been executed by appellant, whereby the latter agreed to guarantee that appellee could make a profit on a sale of the farm within one year from date, and that, if appellee should fail to sell the farm for more than the purchase price agreed to be paid to appellant, he (appellant) would refund to appellee the cash payment, and that appellee should, in the meantime, have the use of the farm free of rent. Appellee exhibited with his answer and cross-complaint a copy of the alleged contract.

The cause was tried on oral testimony and the copy of the alleged contract introduced in evidence by appellee, and the court made a finding in favor of appellee and decreed rescission of the sale. The court also decreed in favor of appellee for the recovery of the amount of his cash payment, after deducting the amount of a

note·executed by appellee to appellant for the price of certain personal property purchased from the latter.

There is a conflict in the testimony concerning the alleged contemporaneous contract for the rescission of the sale. Appellant denied that he executed the alleged contract, or that there was any contract between the parties either oral or written, concerning a guaranty or a rescission of the sale. Appellant testified that the extent of the transactions between him and appellee was the sale and conveyance of the land and the execution by appellee of the notes in suit, and appellee's failure to pay. He testified that he never heard of any claim that there was an additional contract until after the first of appellee's notes fell due and this suit had been instituted or was about to be instituted.

Appellee testified that the contract, a copy of which is exhibited in the cross-complaint, was executed by appellant and delivered to appellee, but that the instrument had been lost. He produced what he asserted to be an exact pencil copy of the contract, and he says that he wrote the instrument, which appellant signed and which was lost. Other witnesses introduced by appellee, principally members of his own family, corroborated him in the statement that there was a contemporaneous contract executed at the time, or immediately before, the execution of the deed.

There is a conflict in the testimony, and the question presented on this appeal is whether or not the finding of the chancery court in appellee's favor was sufficiently supported by the evidence. The only question of law presented relates to the degree, or measure, of evidence required to establish a lost instrument.

This is not an attempt to reform the deed or notes, nor to contradict them in any respect, but appellee relies upon a contemporaneous contract, based upon the same consideration, for a rescission of the sale and conveyance within the time and upon the terms specified. No rule of evidence is violated by permitting appellee

to prove the execution and contents of the lost instrument
by parol testimony.

The alleged contract relates to and affects the title
to land, it constitutes one of the muniments of title in
the chain, and a mere preponderance of the testimony is
not sufficient to establish it. Its execution and contents
must be established by evidence that is clear and decisive.
*Kenady* v. *Gilkey,* 81 Ark. 147; *Queen* v. *Queen,* 116 Ark.
370; *Jacks* v. *Wooten,* 152 Ark. 515.

After careful consideration of the testimony in the
case, we do not think it is sufficient to meet the require-
ments of the rule stated above. Conceding that the pre-
ponderance of the evidence is in favor of the finding, it
falls short of being clear and convincing.

In the first place, the alleged contract is not only
an unusual one, but, under the circumstances, it was a
very unreasonable one for appellant to execute in con-
nection with his sale of the farm. The evidence shows
that, in the first assertion appellee made of the existence
of the contract, he stated himself that he was relying
upon a very unusual contract, and that he had put it
away in the bank with his other papers. He denied this
statement, but it was testified to by a wholly disinter-
ested witness. The contract is unreasonable in that ap-
pellant was apparently willing to sell the place for a
price and then guaranty that a profit would be made on
resale within a year, and that if such profit was not
realized he would refund the part of the price paid and
rescind the sale.

It seems more reasonable that if appellant was will-
ing to guaranty the realization of a profit within a  year
he would have kept the place himself so as to realize the
additional price.

While there were several witnesses in addition to
appellee himself who testified concerning the execution
of the contract, there are discrepancies and inconsist-
encies in the testimony of each of them. All of the wit-
nesses introduced by appellee, including himself, testi-

fied that the contract signed by appellant was written in ink on a certain kind of plain paper, and the copy which is exhibited with appellee's cross-complaint and testimony is in pencil and is unsigned. That paper has been brought up here for our inspection and shows to be in pencil on ruled paped. It is dated December 26, 1919, the same date as the deed. Appellee testified that the contract was signed on the same day that the deed was signed but prior to the execution of the deed. He claims that it was signed by appellant at his (appellee's) home. His narrative of the circumstances is that appellant rode up to his lot, or pasture, that morning, and that he (appellee) went into the house and got the paper and brought it out, and that appellant examined it and signed it with a pen. Appellee testified that he prepared both copies of the paper the night before, and this is corroborated by his daughter, who testified that she saw her father preparing the papers, and that they were both written in ink. Appellee claims that the original which was signed by appellant was in ink, and that his copy was prepared in pencil. There was no explanation given why the copy was prepared in a different way, and no reason was given why the copy was prepared at all. The instrument alleged to have been signed by appellant was, according to the testimony, delivered to appellee, and there appears no reason why appellee should have made a copy at all of the instrument which he was to keep in his own possession, and there was no satisfactory explanation as to how the original was lost, and why the copy was so carefully preserved.

Appellee testified that the pencil copy was not dated at the time, but that he dated it when he recorded the deed on December 24, 1920, nearly a year after the transaction occurred.

It is undisputed that the deal for the sale of the property was closed and the deed executed in the office of appellant's attorneys in Searcy, and appellee concedes that neither the attorneys nor the notary public before whom the deed was executed were apprised of the fact

that there was a contemporaneous contract. Appellee testified that appellant requested him to say nothing about the contract because he did not want his wife to know that he had executed such a contract, yet in spite of this explanation appellee introduced several witnesses to show that he made no secret of the contract among those with whom he came in contact. Appellee admits that he said nothing to any one connected with appellant about having such a contract until after his first note became due. Dr. Moore, a disinterested witness, testified that, after the first note became due, and appellee had failed to pay it, he approached appellee on the subject at the request of appellant, who had written from Illinois, and that appellee then stated that he had an unusual contract which was then with his papers in the bank, and that the contract was written in pencil. It developed that appellee had no papers in the bank, and when he introduced his proof concerning the contract it was to the effect that the lost contract was written in ink and signed by appellant with a pen.

There are many other discrepancies and inconsistencies in the testimony introduced by appellee. The witnesses differ, especialy as to the time the alleged contract was executed. They say that it was before Christmas, and appellee claims that it was the morning that the deed was executed, which was the day after Christmas.

Considering the fact that the contract is such an unusual one and unreasonable in its nature, and the inconsistencies in the testimony as to the details of its execution, the testimony does not appeal to us as being at all satisfactory or convincing, even if it be conceded that there is a bare preponderance in favor of the finding that the contract was in fact executed.

Our conclusion is that the chancery court erred in establishing and enforcing the lost contract. The decree will therefore be reversed, and the cause remanded,

with directions to dismiss appellee's cross-complaint for want of equity, and to enter a decree for the foreclosure of appellant's lien as vendor, in accordance with the prayer of his complaint.

It is so ordered.