## Sims *v.* Fisher.

### Opinion delivered January 24, 1927.

1. QUIETING TITLE—BURDEN OF PROOF.—Where plaintiff, in a suit to quiet title, claimed as heir of his father, who had received a deed from the owner to the land in question, plaintiff must prove both his heirship and that the alleged deed had been executed and delivered to his father.

2. QUIETING TITLE—SUFFICIENCY OF PROOF OF HEIRSHIP.—In a suit to quiet title, where plaintiff claimed through one to whom the land had been conveyed by the original owner, the preponderance of the evidence *held* to show that plaintiff was the son of such grantee.

3. QUIETING TITLE—PROOF OF LOST DEED.—Evidence *held* not sufficiently clear and decisive to establish the execution and delivery of a deed alleged to have been lost.

Appeal from Union Chancery Court, First Division; *J. Y. Stevens,* Chancellor; affirmed.

*Betts & Betts,* for appellant.

*Jordan Sellers* and *Patterson & Rector,* for appellee.

SMITH, J. Appellant brought this suit to quiet and confirm his title to a forty-acre tract of land in Union County. He alleged that his grandfather, Wade Sims, bought the land in 1902, and in 1910 conveyed it to his son Julius, who was appellant's father. The defendants in the case are Eliza Sims, the widow of Wade Sims, who was also known as Wade Fisher, and Martha Arnold, who was the only child of Wade, except Julius. Wade Sims died in 1917, and Julius died in 1914. In their answer defendants denied that appellant was the son of Julius,

and also denied that Wade Sims had ever executed a deed to Julius. After hearing the testimony of a number of witnesses, the court dismissed the complaint as being without equity, and this appeal is from that decree.

It does not appear whether the case was dismissed because the heirship of appellant was not proved, or because the execution and delivery of a deed to Julius Sims was not established. It was, of course, essential for appellant to prove both facts, and the failure to prove either would defeat his action.

Appellant was required to show only by a preponderance of the evidence that he was the son of Julius, and we think the testimony met that burden. Nancy Sims was appellant's mother, and she was also the mother of several other children when appellant was born, and it is claimed that these children were also illegitimate. Nancy Sims testified, however, that they were children by a former marriage. She also testified that appellant was born August 12, 1912, and that she and Julius were married September 12, 1912, and the date of her marriage was clearly established by the date of her marriage license, which was offered in evidence.

The testimony is conflicting as to appellant's age at the time his mother and Julius were married, and he may have been born earlier than August 12, 1912, but it appears that Nancy had lived with Julius as his cook and housekeeper for about two years before appellant was born, and it also appears that Julius recognized appellant as his son. This being true, appellant was legitimatized.

Section 3474, C. & M. Digest, reads as follows: "If a man have by a woman a child or children, and afterward shall intermarry with her, and shall recognize such children to be his, they shall be deemed and considered as legitimate."

We are of the opinion, however, that the relief prayed was properly denied, for the reason that the execution of the deed was not established.

Nancy Sims testified that Wade Sims agreed to execute a deed to Julius as an inducement for Julius to live on the farm and to take care of it and his father, and that, pursuant to this agreement, Julius built a log cabin on the farm, and moved into it in 1910, and that the deed was executed and delivered to Julius the same year; that she did not have the deed recorded, but placed it in her dresser drawer, where it remained until the night Julius died, when some one took it, and that she had not seen it since. She further testified that Eliza Sims admitted having taken the deed out of the drawer, and that Eliza told her the rats destroyed the deed.

The taxes were paid by Julius in his own name for the years 1910, 1911 and 1912, but the land continued to be assessed in the name of Wade Sims, and this assessment was never changed on the taxbooks. Julius died in March, 1914, which was before the close of the tax-paying time for the year 1913, and the taxes for that year were paid by Wade Sims in his own name.

Wade Sims became insane, and was carried to the State Hospital, where he remained until his death in 1917, but his widow, Eliza Sims, continued to reside on the land, and now occupies it as her homestead.

Nancy Sims left the land in 1914, and has not at any time since resided on it, and does not appear to have claimed at any time that the land belonged to her son (appellant) until shortly prior to the institution of this suit.

A number of witnesses testified in appellant's behalf, and several of them gave testimony strongly corroborative of the testimony of Nancy Sims. Among these was W. D. Webb, a white man, who brought this suit as next friend for appellant, who is a colored boy. Webb testified that he went with Nancy to the home of Eliza to inquire about the deed, and Eliza admitted its execution, but stated that the rats had eaten it.

B. Green, who was also a white man, testified that he conducted a small general store, and that Julius had given him a mortgage, which was never recorded, on the

land to secure witness in making advances of supplies, and that, before taking this mortgage, Julius had shown him a deed, which witness did not read, which Julius stated was a deed from his father to him, and that the description of the land in the mortgage was taken from a tax receipt which Julius produced.

C. S. Cranston, who is also a white man, testified that he lived on an adjoining tract of land, and that Julius once showed him a deed, and asked the loan of $18 to pay the taxes on the land, but witness did not make the loan.

R. B. Ripley, another white witness, testified that he lived on adjoining land, and that Wade Sims had-told him he had deeded the land to his son Julius.

Harb Burton, a colored man, testified that he was at the home of Julius about a week before Julius died, and that Julius told Nancy to look in the dresser drawer and hand him his deed. Nancy obeyed, and Julius looked over the deed, and, after doing so, said: "Well, I am going to die, but I have forty acres of land. I have paid for it, and it is yours."

It was very clearly shown that Julius never owned any other land.

There was other testimony more or less corroborative of the testimony recited.

Nancy Sims also testified that the deed was signed by Wade Sims and Eliza Sims and a Mr. Brown, who was a justice of the peace. Mr. Brown was dead at the time of the trial.

On behalf of defendants, Bob Nelson, a colored man, testified that he had known Wade Sims for many years; that they were neighbors and close friends, and that Wade consulted him about his business affairs. He testified that Julius worked on the railroad, and was taken sick and came home to die, and that Wade Sims built the little log house in which Julius resided and later died. That witness helped Wade Sims to get out the boards to cover the house, and bought the nails and the lumber for the floor, but never heard Wade Sims at any time refer to a deed. Julius had nothing to do with

building the house. Julius did not make a crop in the year he died, but worked on the railroad when he worked at all.

The only witness who claimed to have read any part of the deed was Nancy Sims, and she admitted that she had not read all the deed, and did not know what land it described, nor what consideration was recited, but she testified that the deed was signed by Wade and Eliza Sims and by Mr. Brown.

Eliza Sims testified that she had never heard of this deed until a short time before this suit was commenced, and denied that she had ever signed a deed.

Without further recitation of the testimony, we announce our conclusion to be that it does not measure up to the standard required by the law to establish a lost deed. Concerning testimony of this character it was said in the case of *Wasson* v. *Walker,* 158 Ark. 4, 249 S. W. 29:

"The alleged contract relates to and affects the title to land, it constitutes one of the muniments of title in the chain, and a mere preponderance of the testimony is not sufficient to establish it. Its execution and contents must be established by evidence that is clear and decisive (citing cases)."

In the more recent case of *Erwin* v. *Kerrin,* 169 Ark. 183, 274 S. W. 2, it is said:

"The rule is well established in this State, as well as by the authorities generally, that the burden is upon one who claims title under the alleged lost instrument to establish the execution, contents, and loss of such instrument by the clearest, most conclusive, and satisfactory proof (citing cases)."

As the testimony fails to measure up to this standard, the relief prayed was properly denied, and the decree will therefore be affirmed.