4-7549                                                    185 S. W. 2d 705

Opinion delivered February 26, 1945.

*Ezra Garner* and *Henry Stevens,* for appellant.

*McKay & McKay,* for appellee.

GRIFFIN SMITH, Chief Justice.   Mineral rights pertaining to forty acres are matters of controversy.[1]   Land was owned by Traylor, who died in 1941.   His son-in-law, Partee, sued in May, 1943, alleging ownership.   The proceeding was to remove title clouds caused by certain mineral deeds.[2]

---

[1] "Royalty interests" and "mineral rights"—not synonymous terms —are used interchangeably in the briefs.

[2] December 16, 1920, Carl Pharr, H. L. Stewart, and J. L. Barden deeded to J. I. Phelps a thirty-second of the minerals "under" the southwest quarter of the southwest quarter of section thirty-four, township nineteen south, range twenty west.   March 5, 1921, J. I. Phelps deeded to M. A. Mitchell, a thirty-second of minerals under eight acres in the northwest corner of the forty acre tract.   March 22, 1922, the "mineral deed and royalty contract" of J. I. Phelps conveyed to G. Y. Harris one-fourth of the "mineral interest" pertaining to the forty acres.   There were other transactions, but discussion of them is

Appellants' contention is that after sale of the land for 1928 taxes, Foster purchased from the County Clerk, and in June, 1933, Traylor requested Sherman to "redeem" for him. In consideration of $82 Foster deeded to Sherman. Traylor is alleged to have executed his note to Sherman for this amount, and in turn Sherman agreed in writing that upon discharge of the obligation with eight per cent. interest he would convey to Traylor. Fifty .dollars of the debt was paid, but while the balance was outstanding Sherman advanced $150, agreeing that terms of the previous contract should apply. It is recited that about March 31, 1941, someone whose name is not given was sent to Sherman by Partee or Traylor with the request that Sherman permit Partee to take up the notes. The transaction was arranged and Sherman received $227.

It is agreed that Traylor had title, acquired in 1917, and that the royalty or mineral deeds executed by the alleged grantees of Traylor were duly recorded; hence, it is insisted by appellants, Partee had constructive notice in 1941 when he took title that interests in the land had been sold, that such interests could have been acquired only by deed of the proprietor or some incident giving validity to their claims, and that acts of those who conveyed the definite interests disclosed by the record constituted notice that Traylor had parted with the title Partee now seeks to clear.

Phelps made separate answer, admitting Partee's ownership of the fee as such, but contended that mineral or royalty interests had been alienated by Traylor, who in one instance deeded to Pharr, Stewart, and Barden, and also conveyed to Phelps, and that neither deed was recorded, both having been lost. Other deeds are mentioned in the pleadings and proof. Inasmuch as appel-

---

not necessary to this opinion. [Where the wife of a grantor joined in deed, the wife's name is omitted from this statement.]

In an amendment to the complaint it was alleged that on June 11, 1931, a clerk's tax deed purported to convey the forty acres to R. G. Foster. Two years later Foster conveyed to L. L. Sherman. On March 31, 1941, Partee purchased the forty acres and other lands from Sherman. Because of an error in the description, correction deeds were given.

lant's rights are referable to the purported Traylor deeds, we restrict consideration of the evidence to this point, the trial court having found (a) that Partee was an innocent purchaser without notice, and (b) that execution and delivery of the Traylor deeds were not established.

Phelps testified that on December 20, 1920, while living in Louisiana at Haynesville, he traded an old automobile to Pharr, Stewart, and Barden for an undivided thirty-second interest in minerals under the forty acres. In March, 1921, he traded Traylor an automobile for a half interest in minerals under the same land. He procured a deed from Traylor but the deed was lost.

He then sold to M. A. Mitchell a thirty-second interest in eight acres in the southwest corner of the tract. In May, 1943, Partee informed Phelps that records disclosed a deed which was a cloud on his (Partee's) title. Partee was then told that he (Phelps) had bought a half interest from Traylor and a thirty-second interest from Stewart, Pharr, and Barden. The deed was lost in 1922. Traylor, it was claimed, formally acknowledged the deed before W. H. Butler, a Justice of the Peace. This testimony was supported in part by E. E. Ware, who said he went with Phelps to Emerson, Arkansas, in 1921 to deliver a car to Traylor, and that Phelps received a mineral deed from Traylor covering forty acres. He did not remember having read the deed.

Pharr testified that he, Stewart, and Barden bought an undivided thirty-second interest in minerals pertaining to the forty acres, paying $75 each. Traylor's deed (date not given) was placed in a safe in the Emerson Mercantile Company's office where the three were employed (as was Traylor) and it had not been seen since. He was supported in these statements by Barden.

Stewart testified that the deed was executed and that Traylor knew the grantees had sold to Phelps.

Other testimony shed but little light on the claims.

An opinion by the chancellor supporting the decree stated the law to be that the evidence necessary to estab-

lish a lost deed ". . . must be clear and convincing as to execution of the instrument and [as to] its contents, and [must show] that a reasonable search has been made for the document. . . . These rigid rules of law are invoked in order to maintain and preserve the integrity of business transactions. They are absolutely necessary for the preservation of our commercial life."

Quite right! Although a lost deed was established in *Jacks* v. *Wooten,* 152 Ark. 515, 238 S. W. 784, Mr. Justice HART (later Chief Justice) stated the rule to be that the evidence must be clear and convincing. The case cites *Carpenter* v. *Jones,* 76 Ark. 163, 88 S. W. 871, where Circuit Court was upheld in refusing to instruct the jury that all facts and circumstances in connection with a lost deed must be clearly proved. The opinion was written by Mr. Justice WOOD, who in *Langston* v. *Hughes,* 170 Ark. 272, 280 S. W. 374, points to distinctions between the rule when applied in an equity case, and at law. In the Langston-Hughes opinion a statement appearing in *Erwin* v. *Kerrin,* 169 Ark. 183, 274 S. W. 2, is quoted with approval:

"The rule is well established in this State, as well as by the authorities generally, that the burden is upon one who claims title under the alleged lost instrument to establish the execution, contents, and loss of such instrument by the clearest, most conclusive, and satisfactory proof." The Erwin-Kerrin opinion contains this further statement: "Neither the proof of the execution, nor the loss, is sufficient to comply with legal standards for the establishment of title to land by parol testimony as against one who holds the record title. It would be dangerous in the extreme for titles to land to be suspended upon such slender threads. Such is not the policy of the law in any jurisdiction. Hence the rule as above stated." [See, also, *Kenady* v. *Gilkey,* 81 Ark. 147, 98 S. W. 969; *Slaughter* v. *Cornie Stave Co.,* 172 Ark. 952, 291 S. W. 69.] The "clear, cogent, and convincing" rule was recently restated and emphasized. *Wren* v. *Green,* 207 Ark. 162, 179 S. W. 2d 461. Similar holdings extend to lost con-

tracts relating to and affecting land titles. *Wasson* v. *Walker,* 158 Ark. 4, 249 S. W. 29.

While there is testimony of interested persons that Traylor executed and delivered mineral deeds, the transactions occurred twenty years prior to the time trial was had. One of the witnesses had disclaimed knowledge of the deeds, but when confronted with records he "felt certain" Traylor must have made the conveyances, else the subsequent deeds would not have been made. Officers who are alleged to have taken acknowledgments are dead. Perhaps there were transactions of some kind between Traylor and those claiming grants which, as they then thought, gave the right to sell. Contents of the alleged deeds were not sufficiently proved. It must have been the lower court's view (amply supported, we think) that the witnesses honestly drew conclusions from known facts, but assumed other conduct because validity of the things contended for depended upon preceding acts.

Testimony of parties to an action, who are interested in the subject matter of litigation, is not to be treated as undisputed in testing the legal sufficiency of evidence. *Myers* v. *Hobbs,* 195 Ark. 1026, 115 S. W. 2d 880, and cases there cited; *Ball* v. *Hail,* 196 Ark. 491, 118 S. W. 2d 668; *Casteel* v. *Casteel,* 205 Ark. 837, 170 S. W. 2d 1004.[3]

There had been no severance of minerals from the fee, as provided for by § 13600 of Pope's Digest. See *Claybrooke* v. *Barnes,* 180 Ark. 678, 22 S. W. 2d 390, 67 A. L. R. 1436, cited in *Missouri Pacific Rd. Co.* v. *Strohacker,* 202 Ark. 645, 152 S. W. 2d 557.

Affirmed.

[3] For other cases in which effect of testimony given by interested parties is discussed, see West's Arkansas Digest, "Evidence," v. 8, key 589, "Testimony of Party."