MARTIN *v.* NATHAN.

4-9526                                     240 S. W. 2d 8

Opinion delivered June 4, 1951.

*O. D. Longstreth, Dave E. Witt, Joseph Brooks* and *Wm. J. Kirby,* for appellant.

*Sharp & Sharp,* for appellee.

MINOR W. MILLWEE, Justice. This is a suit by appellee, Sol Nathan, against appellant, Bertie Lou Tays Martin, to quiet title to two parcels of land located in Cotton Plant, Woodruff County, Arkansas. Parcel No. 1 consists of a tract of approximately ten acres and Parcel No. 2 is described as "Lot 1, Block 8, the Town of Cotton Plant, Woodruff County, Arkansas."

In his complaint appellee, Nathan, after deraigning title from the government to appellant, Bertie Lou Tays

Martin, alleged that the latter conveyed said lands to the Booneville Banking Company of Booneville, Mississippi, on November 4, 1930; that the liquidating agent in charge of said bank conveyed Parcel No. 1 acreage to appellee on July 2, 1932, and Parcel No. 2 town lots, to appellee on December 29, 1934; that the deed from appellant to the bank was lost or destroyed and never placed of record; that appellee had been in adverse possession of said lands since the execution and delivery of the deeds to him and had erected a valuable home on Parcel No. 2.

In her answer and cross-complaint appellant denied executing a deed to the Booneville Bank; alleged that said bank and appellee were mortgagees in possession and that the liquidating agent had no authority to execute said deeds to appellee. Appellant asked for an accounting for rentals over and above the alleged mortgage indebtedness.

After denying the allegations of the cross-complaint, appellee pleaded the seven-year statute of limitations and laches as a bar to appellant's claim.

Appellant inherited the lands in controversy from her father, title being fixed in her by a decree of the Woodruff Chancery Court upon a mandate of the Supreme Court in May, 1927. See *Tays* v. *Johnson,* 173 Ark. 223, 292 S. W. 122. Appellant resided in Booneville, Mississippi, in 1927 when she borrowed $4,000 from the Booneville Bank. This loan was secured by a mortgage on the lands in controversy. Being unable to pay the loan, appellant on April 10, 1930, gave a new or renewal note to the bank for $5,079.80 payable December 1, 1930. The new note was also secured by a mortgage on the two parcels of land and the amount of the second note represented the original $4,000 borrowed plus interest and other smaller loans to appellant. The Booneville Bank became insolvent and was taken over by the Superintendent of Banks in Mississippi for liquidation on December 26, 1930. Appellant made no payments on the indebtedness and moved to Jackson, Mississippi, in 1930 where she resided until 1936 when she moved to Little Rock, Arkansas, where she has since made her home. The notes

and mortgages executed by appellant were pledged by the Booneville Bank to the Central Hanover Bank and Trust Co. of New York as security for the Booneville Bank's bills payable.

On petition of the Superintendent of Banks of Mississippi in charge of liquidation of the Booneville Bank, the chancery court of Prentiss County, Mississippi, authorized and approved the sale and conveyance of the two lots by decree to appellee in 1932 and 1934. The petition to sell Parcel No. 1 filed in 1932 by the Bank Superintendent in charge of liquidation of the Booneville Bank recites: "That prior to the closing of the Booneville Banking Company for liquidation a deed was taken from one Bertie Lou Tays to certain property in Cotton Plant, Arkansas, securing payment on a note due to the said Booneville Banking Company. That said deed was dated November 4, 1930, and conveyed the following described property, to-wit: . . . That the note of the said Bertie Lou Tays, as a payment on which said property was conveyed to the Booneville Banking Company, is held as collateral security to the indebtedness of the Booneville Banking Company by the Central Hanover Bank & Trust Company, of New York, and that they are entitled to the proceeds of the sale of said property, and have agreed for said property to be so sold for said price upon the condition that the proceeds would be paid to them."

The decree of the chancery court entered on June 18, 1932, in response to said petition recites: " . . . and it appearing to the court that the Superintendent of Banks in charge of the Booneville Banking Company in Liquidation holds among the assets of said bank a deed to the following described property in Cotton Plant, Arkansas . . . and that it is to the best interest of the bank in liquidation that said offer be accepted and that the Central Hanover Bank & Trust Company of New York which held the collateral from which said property was derived and is entitled to the proceeds thereof has agreed for the sale of said property at said price; it is therefore, ordered by the court that the Superintendent of Banks in charge of the Booneville Banking Company

in liquidation be and he is hereby authorized to make deed to said Sol Nathan to the above described property and deliver the same upon the payment of the said $640, and that the said $640 shall be paid to the Central Hanover Bank & Trust Company on the indebtedness of the Booneville Banking Company to it and for the doing of which this shall be the authority for the Superintendent of Banks.''

Acting under authority of this decree, the Superintendent of Banks executed the first deed to appellee on July 2, 1932. This deed recites: ''The above described property was conveyed to the Booneville Banking Company on November 4, 1930, by Bertie Lou Tays, and this deed is made by the Superintendent of Banks for the State of Mississippi, in charge of the Booneville Banking Company in liquidation, by authority of decree of the Chancery Court of Prentiss County, Mississippi, of date June 18, 1932.'' Similar proceedings were had in connection with the sale of Parcel No. 2 to appellee in 1934. Appellee filed the two deeds for record on February 5, 1935.

S. V. Crowe, cashier of the Booneville Bank at and prior to its insolvency in 1930, testified that he had known appellant for several years prior to 1930 and that she executed the deed to the Booneville Bank to apply on her indebtedness; that the details of the transaction were handled by J. W. Sanders, president of the bank; that said deed was either held by Sanders for the benefit of the bank or forwarded to the Hanover Bank, which held the note and mortgage as collateral; and that appellant thereafter made no claim of any interest in the property.

J. W. Sanders died shortly after the bank became insolvent. Other employees of the bank testified to their general understanding that appellant executed the deed to the bank although they could not recall having seen the instrument.

Appellee has held possession and assessed and paid taxes on the two parcels of land since he purchased them. He fenced the ten-acre tract in 1932 and rented it for farm purposes each year until 1948, realizing about $30

annually from said rents. There was a dwelling house on Parcel No. 2 which was in bad state of repair in 1934 and was rented by appellee for $4 per month for about eighteen months and then torn down. Appellee constructed a home on this lot in 1940 where he has since lived. This property had a market value of approximately $25,000 at the time of the trial in 1950.

Appellee first discovered that the purported deed from appellant to the Booneville Bank had not been placed of record in 1948 when he sold some lots off Parcel No. 1 and the purchaser had an abstract of title made. Upon appellant's refusal to execute a quitclaim deed, he instituted this suit in September, 1948.

Appellant denied making a deed to the Booneville Bank and testified that when she executed the renewal note and mortgage on April 10, 1930, she turned the property over to the bank under an oral arrangement with its president, "J. B. Sanders,"[1] whereby the bank would collect the rents, pay the taxes, keep up the property and apply the net income, if any, on her indebtedness. Shortly after this she moved to Jackson, Mississippi. She knew that the Booneville Bank became insolvent and was taken over by a receiver in December, 1930, and that its affairs were being liquidated. Although she maintained contact with friends in Booneville after leaving and her children returned for visits, she never had any correspondence with anyone connected with the bank nor made any inquiry about the property or the status of her loan until appellee's attorney approached her about making a quitclaim deed in 1948. In 1946 appellant's daughter married the son of Seth Pounds, who was receiver and assistant liquidating agent of the Booneville Bank when appellee purchased the property in controversy. Although appellant has known Mr. Pounds since 1930 and had visited with his family in Booneville, Mississippi, at times during a five or six-year period prior to the trial, she made no inquiry of Mr. Pounds in regard to the prop-

---

[1] Witness was evidently referring to "J. W. Sanders." According to the testimony of bank employees, J. B. Sanders died in 1925 and his son, J. W. Sanders, succeeded him as president and served until the bank closed in 1930.

erty. Appellant is a trained and experienced business woman and has worked in business offices since 1927.

By stipulation of the parties a certified copy of a statement of the assets of the Booneville Bank as of December 26, 1930, made in connection with the liquidation proceedings was introduced at the trial. In this statement the property in controversy does not appear in the list of real estate owned by the bank, and the note of April 10, 1930, is listed among the notes and securities held by the bank.

In a decree granting the relief sought by appellee and dismissing appellant's cross-complaint, the chancellor found that the proof established execution of the deed by appellant to the Booneville Bank. The court also found that appellant's cross-complaint was barred by laches and that appellee had been in adverse possession of the lands in controversy for more than seven years.

Appellant first insists that the evidence is insufficient to establish a deed from appellant to the Booneville Bank in that proof of the execution, loss and contents of such deed has not been shown by that clear and convincing evidence required under our decisions. It is argued that the testimony of S. V. Crowe, the only witness testifying to the actual execution of the deed, is too vague and uncertain in that the witness did not detail the contents of the instrument and could not remember the name of the party who notarized it. This court has used various expressions in stating the *quantum* of proof required to establish the existence and contents of a lost instrument.[2] Our cases generally support the rule stated in 54 C. J. S.,

---

[2] "In Arkansas it has been said that the proof should be clear, concise and satisfactory (*Dillard* v. *Harden* (1939), 197 Ark. 5°6, 124 S. W. 2d 10) ; clear and convincing (*Queen* v. *Queen* (1915), 116 Ark. 370, 172 S. W. 1018, Ann. Cas. 1917A, 1101; *Teel* v. *Burel* (1921), 148 Ark. 654, 229 S. W. 725) ; clear, convincing and satisfactory '*Slaughter* v. *Cornie Stave Co.* (1927), 172 Ark. 952, 291 S. W. 69; *Henry* v. *Texas Co.* (1941), 201 Ark. 996, 147 S. W. 2d 742) ; clear and decisive (*Wasson* v. *Walker* (1923), 158 Ark. 4, 249 S. W. 29; *Chambers* v. *Burke* (1937), 194 Ark. 665, 109 S. W. 2d 117) ; clear and satisfactory (*Kenady* v. *Gilkey* (1906), 81 Ark. 147, 98 S. W. 969; *Jacks* v. *Wooten* (1922), 152 Ark. 515, 238 S. W. 784) ; reasonably certain '(*Hooper* v. *Chism* (1853), 13 Ark. 496) ; and clearest, most conclusive and satisfactory (*Erwin* v. *Kerrin* (1925), 169 Ark. 183, 274 S. W. 2; *Langston* v. *Hughes* (1926), 170 Ark. 272, 280 S. W. 374)." Anno. 148 A. L. R. 406.

Lost Instruments, § 27e, as follows: "While the evidence of the former existence, execution, and delivery of a lost instrument must be clear and convincing, and the greater the value of the instrument the more conclusive should be the proof of its existence, inferences from facts and circumstances may, however, be sufficient to prove the former existence of the instrument, or its proper execution and delivery. . . . When parol proof of the contents of a lost deed is offered as the only evidence thereof, ordinarily the witness must have seen it and read it, be able to speak pointedly and clearly to its tenor and contents, and to state the nature of the estate which it conveys."

The following rule is stated by the annotator in 148 A. L. R. 402: "Where there has been an unexplained and inexcusable delay in bringing an action for so many years that those who knew the facts are dead and the situation of the parties is materially changed, defendants who have been in uninterrupted possession relying upon a lost deed are not called upon to furnish that high degree of proof to establish the execution and delivery of the deed which might be required under other circumstances." See, also, Thompson on Real Property (Perm. Ed.), § 3983.

If a decision in the instant case rested on the testimony of S. V. Crowe alone, we would readily agree that appellee failed to meet the burden of proving the execution and contents of the deed by clear and convincing evidence, but this is not the case. The testimony of Crowe is strongly supported by record proof of the proceedings in the chancery court of Prentiss County, Mississippi, in connection with the sale of the lands to appellee. As noted above, the verified petition of the Superintendent of Banks recites the names of the grantor and the grantee, the date of the deed and the description of the property conveyed. The decree rendered in response to the petition finds that such deed was executed and the deed to appellee likewise recites the execution of the deed in proper detail.

The facts in the case at bar are similar in many respects to those in *Jacks* v. *Wooten,* 152 Ark. 515, 238

S. W. 784, where the court said: "In determining whether a deed claimed to have been lost was executed the court might consider how long the parties asserting the claim had been in possession of the land, its value, whether the land had been held adversely to such claim, and all the surrounding circumstances. *Carpenter* v. *Jones,* 76 Ark. 163, 88 S. W. 871." See, also, *Farris* v. *Bell,* 174 Ark. 689, 296 S. W. 56; *Dillard* v. *Harden,* 197 Ark. 586, 124 S. W. 2d 10.

In *Jacks* v. *Wooten, supra,* the grantor in the lost deed lived in the same town with the plaintiff and the parol evidence as to the execution and loss of the deed was more extensive than that adduced in the instant case, but such parol evidence was not supported by record proof such as that produced in the case at bar. Perhaps the strongest circumstance tending to show that appellant parted with title to the property in the instant case is the undisputed and admitted fact that she made no inquiry whatever about the matter from 1930 until 1948 when she was requested to make a quitclaim deed in place of the lost instrument. As was said of the grantor and her husband in *Jacks* v. *Wooten, supra*: "Their silence in permitting the plaintiffs during all these years to collect the rents and manage the property as their own is a strong circumstance tending to show that the defendant had parted with her interest in the property." Appellant's silence and indifference during the eighteen years that appellee occupied and exercised complete dominion over the lands, coupled with proof of the aforementioned court records, are potent circumstances which tend to corroborate the positive testimony of S. V. Crowe that appellant executed the deed in question.

Our conclusion is that appellee met the burden of establishing the execution of the deed from appellant to the Booneville Bank by clear and convincing evidence. It is, therefore, unnecessary to determine the issues of laches and limitations.

Affirmed.