COLE *v.* BURNETT.

Opinion delivered June 21, 1915.

1. PARTITION—EQUITY JURISDICTION—ISSUE OF TITLE—PRACTICE.—Where plaintiff's title is disputed, equity will decline jurisdiction, in an action looking to a partition of the land, to try the question of title, and will dismiss plaintiff's complaint without prejudice, or the court may retain the bill for a reasonable time until the issue of title has been determined at law.

2. EQUITY JURISDICTION—PARTITION—ISSUE OF TITLE.—Where plaintiff in a partition proceeding, voluntarily submitted the issue of the title to the lands involved, to the chancery court, he will not be heard to complain on appeal, that the court had no jurisdiction.

3. EVIDENCE — TITLE TO LAND — TESTIMONY OF GRANTOR — CONFLICTING CLAIMS.—Where plaintiff claimed an interest in certain lands, by reason of a warranty deed from one T., it is competent for T. to testify in person, that he had also deeded the land to another; T. is a competent witness to testify to any fact within his own knowledge pertaining to the issues in the case.

4. APPEAL AND ERROR—FINDINGS OF CHANCELLOR—FACTS.—Findings of fact made by a chancellor will not be disturbed on appeal, unless they are against the clear preponderance of the evidence.

5. PROPERTY—TITLE TO REAL ESTATE.—The finding of the chancellor that the title to certain property was good in defendants, as against a claimant to an interest therein, through the same grantor, held to be supported by the evidence.

Appeal from Greene Chancery Court; *Charles D. Frierson,* Chancellor; affirmed.

*Geo. A. Burr* and *R. E. L. Johnson,* for appellant.

1. The court erred in retaining jurisdiction of the cause, and in rendering a final decree dismissing the complaint for want of equity. Adverse possession and the seven years' statute of limitations were pleaded in the answer, plaintiff's title was denied, and also that he was a tenant in common; and proof was introduced to establish the plea, sufficient, if not controverted, to establish an

adverse holding of the land. The complaint ought to have been dismissed without prejudice to another action at law to try out defendants' plea of adverse possession. 91 Ark. 26; 47 Ark. 235; 71 Ark. 544; 75 Ark. 6; 88 Ark. 610; 27 Ark. 77; 40 Ark. 155; 44 Ark. 344.

2. The decree is not sustained by the proof. The testimony of G. W. Treadaway, regarding what he claims was a verbal sale of his interest to J. T. Burnett, was incompetent because he had made appellant a warranty deed, and could not be heard to testify as to a prior verbal sale of his interest to some other person. The most that could be made of the transaction of sale as testified to by this witness would be that there was an executory contract of sale as between himself and Burnett, and would not be sufficient in law upon which to base an adverse claim of title against a co-tenant. 2 Am. & Eng. Enc. of L. 495; 100 Cal. 158; 34 Pac. 667.

It devolved upon the appellees to establish by satisfactory, clear and unequivocal proof that there was an ouster as against G. W. Treadaway and appellant by their father. Acts of disseizin must be unequivocal, and clear proof is always required. 2 Am. & Eng. Enc. of L. 49; *Id.* 491; *Id.* 499. See, also, 38 Cyc. 37.

No brief filed for appellees.

HART, J. On July 16, 1913, J. W. Cole filed a complaint in the chancery court against B. B. Burnett and A. C. Burnett, in which he alleged that he and the defendants were owners as tenants in common of eighty acres of land situated in Greene County, Arkansas, that he was the owner by purchase of an undivided two-fifths interest in said land, and that the defendants were owners of an undivided three-fifths interest therein. The prayer of the complaint was that the lands be partitioned according to the respective interests of the plaintiff and the defendants.

The defendants filed an answer in which they denied that they were tenants in common with the plaintiff in and to said land. They denied that the plaintiff had any title whatever in and to said land, averred that they were the

owners thereof as heirs of their father, and that he had purchased the land in his lifetime. They also set up title by adverse possession.

The facts, as developed by the defendants, are as follows:

Richard Treadaway was the original owner of the lands, and they were his homestead. He died some time during the Civil War and left surviving him his widow, who is now living and has been confined to the insane asylum ever since two or three years before this suit was instituted. He also left surviving him five children, namely, W. B. Treadaway, G. W. Treadaway, B. C. Treadaway, Mary Howard and Thomas J. Treadaway. John T. Burnett married Mary Howard, who was a half-sister of the other children, and went into possession of the lands in controversy in 1869, and remained in possession of it until his death about sixteen years ago. It is admitted that he purchased the interest of three of the heirs before he went into possession of the lands. In 1883 he obtained a warranty deed from Thomas J. Burnett for his undivided one-fifth interest in the lands, and the consideration recited in the deed is thirty dollars. John T. Burnett paid the taxes on the land and made various improvements on it up to the time of his death, about sixteen years before the institution of this action. After his death the widow and their two children, the defendants in this action, remained in possession of the land, and paid the taxes on it until the time Mrs. Burnett was placed in the insane asylum. Since that time the defendants have been in possession of the land.

The deposition of G. W. Treadaway was taken by consent September 22, 1914, and he testified that he had sold his undivided one-fifth interest in the land to John Burnett about thirty-five years ago, but that no deed was executed by him; that in 1873 he went to Burnett and Burnett paid him $10 for his interest; that about sixteen years ago he met the plaintiff Cole on the train, and the question of his interest came up, and he agreed to sell Cole his interest for $15, and some time thereafter, in

1896 or 1897, he executed a deed to Cole for his interest. He first stated that Burnett lived seven or eight years after he sold his interest to Cole, but subsequently stated that Burnett lived only four or five years after the execution of his interest to Cole.

G. W. Treadaway also stated that he told the plaintiff he had sold the land to John T. Burnett, and further stated that Burnett had not paid him all the money he thought was due him. He stated also that he went to Burnett and asked him for a further payment for his interest stating that he thought he ought to receive as much as the other heirs had received for their share, and that Burnett refused to pay him any more; that he made an agreement with Cole whereby he sold the interest of his brother Thomas J. Treadaway to Cole for $20; that he told his brother about this sale, and his brother authorized him to execute a deed to Cole for his interest; that pursuant to this direction he executed a deed to Cole for the undivided interest of his brother, and signed his brother's name to the deed; and that Cole paid him $15 for his own interest.

The defendants, who were, respectively, twenty-six and twenty-eight years of age, testified that they lived on the land with their father until he died, and that they had never heard of the plaintiff Cole, or their uncle, G. W. Treadaway, claiming any interest in the land while their father lived; and that their father claimed to own the land while he lived, and that they had claimed it since his death.

The plaintiff testified in his own behalf, and said that he agreed to pay G. W. Treadaway $15 for his undivided one-fifth interest, and at the same time agreed to pay him $20 for his brother, Thomas J. Treadaway's interest; that before the deed was executed and the sale consummated he examined the records, and found that the title was in the Treadaway heirs; that the deeds were executed and delivered to him, and the money paid by him to G. W. Treadaway; that G. W. Treadaway did not tell him that he had previously sold his interest to John T. Burnett;

that he had lived near the land and had known John T. Burnett nearly all his life; that after he had secured the deeds from the Treadaways, he told Burnett about purchasing their interest, and said that Burnett "got sore" about it, but did not claim that he owned their interest; that the deed from T. J. Treadaway to Burnett was filed for record between the time he first investigated the record, and the time he procured and filed for record the deed from T. J. Treadaway to himself; that after Burnett died, he met his widow and told her that as long as she stayed on the place and kept it up, he would not deprive her of her home; that soon after she was placed in the State insane asylum, he took action looking to the establishment of his title to an undivided two-fifths interest in the land.

The chancery court decreed that the plaintiff's complaint should be dismissed for want of equity and the plaintiff has appealed.

It is contended by counsel for the plaintiff that the court erred in retaining jurisdiction of the cause, and in rendering a final decree dismissing the complaint of the plaintiff for want of equity. In support of their contention, they rely upon numerous decisions of this court to the effect that partition can not be had of land held adversely, or the title to which is in dispute, unless the lands be vacant or not in actual possession. *London* v. *Overby,* 40 Ark. 155; *Cannon* v. *Stevens,* 88 Ark. 610; *LaCotts* v. *Pike,* 91 Ark. 26; *Hill* v. *Cherokee Construction Co.,* 99 Ark. 84.

(1-2) Where the plaintiff's title is disputed, our decisions have been uniformly to the effect that courts of equity will decline jurisdiction to try the question of title, if the rule is invoked. In such cases the complaint will be dismissed without prejudice, or, in analogy to the case of dower, the court will retain the bill for a reasonable time until the issue of title has been determined by a court of law. Had the plaintiff invoked the rule, it would have been the duty of the chancery court to have dismissed his complaint without prejudice, or to have retained the cause for a reasonable time with liberty to the plaintiff to bring

such action as he might be advised to establish his title. The record does not show that the plaintiff invoked the rule in this case. On the contrary, issue was joined on the question of title and depositions were taken, and that question, by consent so far as the record discloses, was presented to the court for determination. The plaintiff made no motion to transfer the cause to the law court, and made no objection to the jurisdiction of the chancery court to try the question of title. Having voluntarily submitted the issue of title to the chancery court, he can not now be heard to complain that such court had no jurisdiction. *Cribbs* v. *Walker,* 74 Ark. 104; *Apple* v. *Apple,* 105 Ark. 669, and cases cited; *Farmer* v. *Towers,* 106 Ark. 123.

(3)   It is next contended by counsel for the plaintiff that the court erred in admitting the testimony of George W. Treadaway to the effect that he had sold the land to John T. Burnett. Counsel insists that Treadaway, having given a warranty deed to the plaintiff, should not be permitted to contradict the terms of that deed.

It is a familiar rule of law that the acts and declarations of a person in possession of a tract of land are admissible to show the character and extent of his possession, but not to contradict his deed to another. But that rule has no application here. The declarations of Treadaway were not introduced in evidence. He testified himself. He was a competent witness, and, like any other witness, might testify to any fact within his own knowledge pertaining to the issues in the case. His testimony was as to facts within his own knowledge and the question of their truth or falsity was for the court trying the case.

(4-5)   This brings us to the question as to whether the decision of the chancellor on the issue of title was correct. According to the uniform current of decisions in this State, findings of facts made by a chancellor will not be disturbed on appeal, unless they are against the clear preponderance of the evidence. G. W. Treadaway testified that he had sold the land to John T. Burnett in 1873, and that Burnett paid him $10 for his interest. Burnett was then in possession of the land, having purchased the

interest of the other heirs, and continued in possession until his death, paying the taxes on the land and making improvements on it. After his death, his widow and children remained in possession of the land until the present suit was instituted. Burnett's two sons, although they were small when their father died, testified that neither their uncle G. W. Treadaway, nor the plaintiff Cole, claimed any interest in the land during their father's lifetime. Cole permitted Mrs. Burnett and her children to remain on the land, and to pay taxes thereon for a number of years after Burnett's death. It is true that he said he did this because of his respect for Burnett's widow; and he denies that G. W. Treadaway told him that he had sold his interest in the land to Burnett, or that Burnett ever claimed to own that interest before his death. We think, however, that the surrounding circumstances tend to corroborate the testimony of the defendants, and are of the opinion that the finding of the chancellor is not against the clear preponderance of the evidence and should be upheld.

The decree will be affirmed.