HENRY *v*. THE TEXAS COMPANY.

4-6096 147 S. W. 2d 742

Opinion delivered February 17, 1941.

*Caudle & White, Whitley & Utley, Herschell Bricker* and *Owens, Ehrman & McHaney,* for appellants.

*Hawkins & Keith* and *Mahony & Yocum,* for appellees.

SMITH, J. Appellants are the children and heirs-at-law of George Henry, deceased, and as such they claim title to a 70-acre tract of land in Columbia county. It was alleged in their complaint that on December 20, 1917, George Henry purchased the property in question from one W. A. Rowland, and that he immediately moved on to the land, with his wife and children, thereby impressing it with the character of a homestead. It was alleged that the consideration for this conveyance was the sum of $1,000, of which $500 was borrowed by Henry from one Hamp Dickens, and that to secure this loan Henry delivered the deed to Dickens. The deed was never placed of record.

It was further alleged that Henry died February 12, 1918, seized and possessed of the land, and that after his death his widow paid the loan of $500 to Dickens from the proceeds of a life insurance policy carried by Henry on his life which was payable to his widow, and that subsequent to this payment she persuaded Rowland to execute a second deed naming her as the grantee. The deed from Rowland to Mrs. Henry dated May 20, 1918, was recorded in 1920. All the Henry children were minors at the time of the execution of the alleged deed from Rowland to their father, and they testified that they remained in ignorance of the fact that the land had been conveyed to their father until 1939. The widow and children lived on the land for many years, the children leaving one by one as they reached maturity and established homes of their own, but the widow continued to reside on the land until 1935.

On November 16, 1935, Mrs. Henry executed an oil and gas lease to Goode & Longino who, in turn, assigned it to the Texas Company; and on January 27, 1938, she conveyed an undivided one-half interest in the oil, gas and mineral rights in the land to Longino. On February 17, 1939, Mrs. Henry executed to A. W. Baird an undivided one-thirty-second royalty interest in the oil, gas and minerals in said lands, and on March 21, 1939, Baird conveyed that interest to the Atlantic Refining Company.

The refining company received information in some manner that the Henry children—and not the widow—had title to this property, and that Mrs. Henry had only dower and homestead rights in the land. Before approving the title the attorney for the refining company imposed the requirement that Mrs. Henry procure deeds from her childen, and four of the five children executed deeds to her. It was alleged that these deeds were executed without consideration, and that their execution was procured through the fraudulent representation that the deeds were a mere formality and actually conveyed nothing and were required because of the fact that the refining company was technical in the purchase of the property, and that the deeds would serve no purpose except to make it possible for their mother to receive the money for the conveyance to Baird. Edward, one of the children, refused to execute the deed, and asked why its execution was necessary. His mother and the refining company's agent then disclosed to him the fact that Rowland had executed a deed to his father before executing the second deed to his mother. The following day, and prior to the time the four quitclaim deeds had been placed of record, the four grantors called on the agent of the refining company to return the deeds and, in lieu thereof, to accept a deed from them conveying to the refining company the same interests which the deed from Mrs. Henry purported to convey. The consideration for the deed of their mother, Mrs. Henry, to the refining company, had not been paid, and was not paid until some weeks later.

The four children who had executed deeds filed a complaint praying their cancellation, and the cancellation also of the deed to their mother from Rowland. Edward also joined in the prayer for that relief. An answer was filed by the grantees from Mrs. Henry denying all the material allegations of the complaint. They pleaded also that they were innocent purchasers, who had relied upon the record title; and there was also a plea of laches. The complaint was dismissed as being without equity, and from that decree is this appeal.

The court found the fact to be that the execution, contents, and loss of the alleged deed from Rowland to Henry had not been proved by the competent, clear and convincing testimony required by the law in such cases.

Four witnesses testified as to the execution of the deed from Rowland to Mr. Henry, these being Mrs. Henry, Nesbit Rowland, a son of the grantor, in the deed to Mrs. Henry, Bose Barton, and Luther Hunt. Of these four Mrs. Henry alone claimed to have any personal knowledge of the deed to her husband from Rowland. But it is to be remembered that her testimony was given after she had executed the deeds herein recited. Her testimony was not competent to impeach her deeds.

At § 281, Jones on Evidence, (4th Ed.), Vol. 1, p. 525, it is said: "The principle is here considered in respect of recitals and statements in deeds. It is to be observed that such recitals are not, like casual admissions, judged by their intrinsic weight as evidence, but that, under the limitations to be named, they conclusively bind the parties and their privies. It has long been a familiar rule of the law that parties may, by executing instruments under seal, conclude themselves from disproving or contradicting, by any evidence of less solemnity, the statements contained therein. Said Lord Mansfield: 'No man shall be allowed to dispute his own solemn deed.' Thus a specific recital in a deed, to the effect that the grantor has title to or that he is in possession of the land conveyed, will estop him from asserting the contrary as against the grantee. In other words, the grantor is estopped from saying that he has no interest in the land."

Nesbit Rowland testified that his father told him he had sold the land to Mr. Henry, and the testimony of Luther Hunt was not more definite. Neither had ever seen the deed, and did not undertake to state what its recitals were.

The information which led the refining company to demand the execution of the quitclaim deeds by the Henry heirs appears to have been obtained from Bose Barton, who testified that Rowland, the grantor, and Dickens

who had loaned the purchase money, and Mrs. Henry herself, had all told him that Rowland sold the land to George Henry. But this witness had never seen the deed, and knew nothing about it except what he had been told. The probative value of the testimony of this witness would be much weakened, even though it were not hearsay, by the fact that Longino testified that Barton had suggested to him that he could purchase the lease from Mrs. Henry, a statement which Barton did not deny.

The deeds from Mrs. Henry were obtained after an abstract of the title had been prepared, and examined, and the title approved by a competent attorney, and the undisputed testimony is to the effect that the purchases were innocently made, for full value, from the person in possession under a deed which apparently conveyed the title to the occupant of the land.

Aside from the question of laches, we think the decree of the court, dismissing the complaint as being without equity, should be affirmed for two reasons. First, that the execution of the deed from Rowland to Mr. Henry was not sufficiently proved. It was said in the case of *Slaughter* v. *Cornie Stave Co.*, 172 Ark. 952, 291 S. W. 69, that "It is the settled rule in this state that parol evidence to prove the contents of a lost deed should show that the deed was duly executed as required by law, and should show substantially all its contents by clear, convincing and satisfactory evidence. (Citing numerous cases.)"

The provisions of § 1847, Pope's Digest, also require the dismissal of the complaint. So much of that section as is relevant here reads as follows: "No deed, bond, or instrument of writing, for the conveyance of any real estate, or by which the title thereto may be affected in law or equity, hereafter made or executed, shall be good or valid against a subsequent purchaser of such real estate for a valuable consideration, without actual notice thereof; . . . , unless such deed, bond, or instrument, duly executed and acknowledged, or approved, as is or may be required by law, shall be filed for record in the office of the clerk and ex-officio recorder of the county where such real estate may be situated."

The decree being correct is affirmed.

McHANEY, J., not participating.