WREN v. GREEN.

4-7327                                        179 S. W. 2d 461

Opinion delivered April 17, 1944.

*Jack Machen,* for appellant.

*Melvin T. Chambers,* for appellee.

SMITH, J.   W. T. Hindman departed this life January 18, 1941, and was survived by his widow and his mother, who, as surviving heirs-at-law, brought this suit to establish and restore a lost deed to one-half the oil and gas under the land in controversy, which deed they alleged had been executed by T. P. Romack and wife to Hindman in the year 1922. The relief prayed was denied, and from that decree is this appeal.

Romack owned the east half, southwest quarter, section 11, township 15 south, range 20 west, Columbia county, Arkansas, and after his death, which occurred May 22, 1934, his widow and heirs-at-law executed a warranty deed, dated December 30, 1935, conveying the southeast quarter, southwest quarter, of this section to Fred S. Green. It was alleged that Romack and his wife had previously conveyed one-half the mineral rights in the north half of this 80-acre tract of land, described as the northeast quarter, southwest quarter, to one Lide. The witnesses testifying in the case referred to this land as the north half and the south half. The north half being the northeast quarter, southwest quarter, and the south half being the southeast quarter, southwest quarter. This litigation involves only the tract last above

164

described, and is predicated on the allegation that Romack and wife had conveyed .the mineral rights in the south half to Hindman, before the widow and heirs of Romack conveyed the land to Green.

The answer filed by Green presented three questions of fact: (1) whether a deed to Hindman had ever been executed; (2) whether the deed, if executed, had been delivered; and (3) whether, if executed and delivered, Green bought without knowledge of its existence, it being alleged that the said deed to Hindman had been lost without having been recorded. In an opinion denying the relief prayed, the court expressed doubt as to the sufficiency of the proof to meet the requirements of the law upon the first and third of these issues, but made the specific finding that the testimony did not show a delivery of the deed.

The plaintiffs' case rested largely upon the testimony of Romack's widow, now Mrs. Underwood, which was to the effect that she and Romack, her then husband, had executed a mineral deed to Hindman for an undivided half of the south half for the consideration of $1,000, which was paid them, and she testified further that when she and her children, the heirs-at-law of her husband, Romack, executed a warranty deed to Green, she advised Green that an undivided half of the minerals on the south half of the land had previously been sold to Hindman.

There was some corroboration of this testimony, but more in contradiction. Green's testimony is as definite and positive as is that of Mrs. Underwood to the effect that he was unaware of the prior conveyance to. Hindman. Green's sister testified that the negotiations for the purchase of the land occurred at Green's home, and that she was present and heard the conversation which then took place; that Green asked Mrs. Underwood about the sale of the minerals, and that Mrs. Underwood stated they had sold the minerals on the north half, but had not sold those on the south half. This testimony was corroborated by D. M. Green, the father of the witness,

and Fred Green, whose testimony was to the definite effect that Mrs. Underwood told Fred Green there had been no sale of the minerals on the south half of the land. The testimony shows that before purchasing the land, Green consulted an abstracter of land titles, who told him that an examination of the record disclosed that the title to the south half was clear.

Green pleaded both laches and limitations, and while the complaint was not dismissed on either of those grounds, the testimony tending to support the plea of laches cannot be disregarded in weighing the evidence. It will be remembered that the deed sought to be established if executed at all, was executed in 1922, and this suit was not brought until 1942, so that there was an intervening period of 20 years, and during that time both Romack and Hindman died.

The testimony of Mrs. Underwood was to the effect that the sale to Hindman was consummated through an escrow agreement, the deed having been attached to a draft, both of which were deposited in a bank, which became insolvent in 1929 and whose records cannot now be found, with the understanding that the deed should be delivered when the draft was paid, and that it was paid. In the opinion dismissing the suit as being without equity, the trial judge expressed doubt as to the sufficiency of the testimony to establish the existence of the deed, but he expressed the definite opinion, and based his decision upon the finding, that the deed had not been delivered to Hindman even though its existence had been shown. Certain it is that Hindman never placed the deed of record, and Mrs. Underwood did not testify that the deed had ever been delivered to Hindman by the escrow agent, nor did any other witness so testify. Mrs. Underwood was asked if the deed had been delivered, and answered ''Yes,'' but she did not state when, to whom, or the circumstances under which the delivery was made, and although the payment of the draft to the escrow agent would have constituted a constructive delivery of the deed, yet the Court was warranted in finding there had been no such delivery. It is

very highly improbable that Hindman would have paid a thousand dollar draft for a mineral deed and not have taken possession of the deed, and if he did so his indifference and negligence is responsible for this litigation under which his heirs attempt to assert title.

Now, it is permissible to establish and restore a lost deed, but the cases are all to the effect that this relief will be granted only when the testimony as to the execution and delivery of the deed sought to be restored is clear, cogent and convincing, and we are unwilling to say, in view of the long lapse of time and other circumstances of the case, that the finding of the court is not sustained by the testimony. Moreover, if the existence and delivery of the deed was shown by testimony sufficient to meet the requirements of the law to obtain the relief prayed, the question remains whether Green was an innocent purchaser, and the preponderance of the testimony, in our opinion, shows that he was.

The decree must, therefore, be affirmed, and it is so ordered.

KNOX, J., non-participating.

McFADDIN, J., dissenting. The purpose of my dissent is to call attention to the conflict between *Cole* v. *Burnett*, 119 Ark. 386, 177 S. W. 1146, and *Henry* v. *Texas Company*, 201 Ark. 996, 147 S. W. 2d 742, on the rule of estoppel by deed.

The real question in the case at bar, as I see it, is whether Mrs. Underwood can be heard to say that at the time of the deed to Mr. Green she and her husband had already conveyed part of the minerals to Hindman. Mrs. Underwood so testified, and was supported by her daughter. With Mrs. Underwood's testimony considered, I think appellant should prevail for Mrs. Underwood's testimony appears to me to be clear and convincing.

But appellee objected to Mrs. Underwood's testimony, claiming that she had executed a general warranty deed to Green in 1935 without any recitals as to previously conveyed minerals, and that she was estopped

by such deed from testifying as to previous conveyances; and appellee cited *Henry* v. *Texas Co. (supra)*.

I point out:

I. In *Cole* v. *Burnett*, 119 Ark. 386, 177 S. W. 1146, Mr. Justice HART, speaking for this court said: "It is next contended by counsel for the plaintiff that the court erred in admitting the testimony of George W. Treadaway to the effect that he had sold the land to John T. Burnett. Counsel insists that Treadaway, having given a warranty deed to the plaintiff, should not be permitted to contradict the terms of that deed.

"It is a familiar rule of law that the acts and declarations of a person in possession of a tract of land are admissible to show the character and extent of his possession, but not to contradict his deed to another. But that rule has no application here. The declarations of Treadaway were not introduced in evidence. He testified himself. He was a competent witness, and, like any other witness, might testify to any fact within his own knowledge pertaining to the issues in the case. His testimony was as to facts within his own knowledge and the question of their truth or falsity was for the court trying the case."

In *Henry* v. *Texas Company*, 201 Ark. 996, 147 S. W. 2d 742, this court said: "Of these four Mrs. Henry alone claimed to have any personal knowledge of the deed to her husband from Rowland. But it is to be remembered that her testimony was given after she had executed the deeds herein recited. Her testimony was not competent to impeach her deeds."

There is thus an irreconcilable conflict between the applicable rule of evidence in these two cases, and we should now decide which rule is to be followed.

II. The only authority or textwriter cited by the court to sustain its quotation in *Henry* v. *Texas Company (supra)* was Jones on Evidence (4th Ed.), vol. I, p. 525, to the effect that no man should be allowed to dispute his own deed. This quotation from Jones on

Evidence is a good general law, but the same textwriter (Jones on Evidence, 4th Ed., vol. I) at p. 528, distinguishes between general recitals and specific recitals and says: "The decisions recognize a distinction between those recitals in a deed which are specific or particular and which must be deemed to have received the deliberate intention of the parties, and those which are general and merely formal. Recitals as to consideration, date, quantity and the like do not carry the same conclusive effect as do the more specific recitals and statements referred to in this discussion. In order to have conclusive effect, recitals should be clear and unambiguous. It has been said to constitute an estoppel by deed, there should be a distinct and precise admission of a fact."

The quotation just given finds support in 21 C. J. 1090: "General and Particular Recitals. To found an estoppel the recital must be certain. With this idea in mind recitals have been classified as being either general or particular. General recitals are such as do not definitely affirm or deny the existence of some fact, or either expressly or impliedly show a clear intention of the parties that either one or the other or both of them shall be concluded from disputing the fact recited. These do not work an estoppel as to the fact in question. Particular recitals, on the other hand, are such as definitely affirm or deny the existence of some fact and either expressly or impliedly show a clear intention of the parties that either one or the other or both shall be precluded from asserting anything to the contrary."

And in 21 C. J. 1094, in discussing the description in a deed as constituting an estoppel, it is stated: "Description. Recitals simply by way of description of the land intended to be conveyed, while admissions as to the identity of the land, do not raise an estoppel as to other matters, such as the quality of the land or the title thereto."

I therefore reach the conclusion that the description in the deed did not constitute an estoppel on the

issue of title. Neither did the covenant of general warranty constitute such an estoppel, because that covenant was a contract and not a recital. Neither did the use of the words "grant, bargain, and sell" in the deed constitute an estoppel for, by § 1795 of Pope's Digest, these words constitute "an express covenant." Thus these words are not a recital but only a covenant.

Without prolonging this dissent I conclude by saying that in my opinion Mrs. Underwood's testimony was admissible; and with her testimony in the record, the cause should be reversed.