134

SCHWARTZ v. HARDWICKE.

5-1574                                          313 S. W. 2d 832

Opinion delivered June 2, 1958.

*Roy S. Dunn, Shaw, Jones & Shaw,* for appellant.
*Chas. I. Evans,* for appellee.

MINOR W. MILLWEE, Associate Justice.    This suit
was brought by appellees, Mort Hardwicke and wife,
against appellants, Herman Schwartz and wife, primari-
ly to establish a deed as a lost instrument.    In addition,
appellees sought an accounting of certain monies al-
legedly withheld by appellants from a stone cutting bus-
iness corporation owned by the parties in equal shares,
and for an injunction to restrain Mr. Schwartz and his
brother from operating a competitive business on adja-
cent lands.    There is a direct appeal from a decree in

which the chancellor found that the appellants had executed and delivered the deed in question to the business corporation; and that it was duly established as a lost instrument. Appellees have cross-appealed from the court's denial of their plea for an accounting by appellants of the affairs of the corporation.

As a basis for the decree, the trial court rendered a comprehensive memorandum opinion which we set forth and adopt as a clear and accurate appraisal and summation of the evidence adduced and the issues presented. The opinion reads:

"At a time when Mort Hardwicke was County Judge of Logan County and engaged in maintaining its roads he chanced to discover a deposit of building stone on or near lands belonging to Mr. and Mrs. Herman Schwartz. That particular kind of building stone was in demand and Herman Schwartz and Mort Hardwicke formed a partnership to quarry and market the stone, Schwartz being the active manager and Judge Hardwicke advising and assisting.

"Their venture was profitable and brought to each a substantial return each year. Books and records were kept by Mr. Schwartz in a manner satisfactory to both parties for the type business they were conducting.

"At some time prior to May 9, 1951, Schwartz and Hardwicke consulted with Hon. L. J. Arnett, an attorney of long and favorable acquaintance to both and from their consultation evolved an agreement that a corporation be formed. The details of the formation of the corporation and even the terms of the agreement to form the corporation are in dispute, but the testimony of Mr. Arnett, who actually did the legal work is both explicit and also logical and when considered together with the 'Articles of Incorporation,' bearing the admitted signatures of Mr. and Mrs. Hardwicke and Mr. and Mrs. Schwartz, it is apparent that 'Logan County Building Stone Co., Inc.,' was validly created and is now and has been continuously in existence and operation since its incorporation in May of 1951. The name 'Cherry Blend Stone'

was registered in the U. S. Patent office by the corporation and business form statements were printed and used with the following heading:

Logan County Building Stone Co., Inc.
producers of
Cherry Blend Stone
(Reg. U. S. Pat. office)
Phones: 101 or 396
Herman Schwartz, Pres., M. B. Hardwicke, Sec.

"Business was carried on in the corporate name. There is such a mass of circumstantial evidence in addition to the direct evidence in the record that the court cannot but find the creation and existence of the corporation in exactly the manner testified to by Mr. Arnett.

"Other than the change from a partnership to a corporation the business of operating the quarry and marketing stone was continued uninterrupted with Herman Schwartz continuing to serve as manager and with Judge Hardwicke assisting until January, 1953, when Judge Hardwicke went out of public office. At that time both men became active in the stone business carried on by the corporation, Mr. Schwartz continuing to sell, collect and look after the business side and Mr. Hardwicke attending more to the quarrying and preparing of stone for sale.

"Mr. Schwartz also engaged in other stone selling ventures. He and his brother opened a quarry in the vicinity of that operated by the corporation. The stone produced was very similar and in his selling sometimes Mr. Schwartz would sell 'split' loads, i. e., part of a load of stone being supplied from the quarry of the corporation and the other part from the quarry owned by Herman Schwartz and his brother.

"The activity of Mr. Schwartz was such that Mr. Hardwicke became dissatisfied and this dissatisfaction was enhanced by a general slackening up in the demand for this particular type building stone and the resulting appreciable decrease in the profits derived from the cor-

poration. Mr. Hardwicke decided he would try to help with the sales and actually did do some selling and collecting. Mistrust was multiplied when it was disclosed that Mr. Schwartz had deposited some corporation money in the Bank of Charleston in his son's name and Mr. Hardwicke had deposited some money in the Bank at Dardanelle.

"With the assistance of Mr. Arnett, Mr. Hardwicke and Mr. Schwartz tried to get the affairs of the corporation back on an amicable basis and a 'get-together' was held on June 18, 1955, and a balance and statement was struck and reduced to writing and endorsed as follows:

'Approved as read witness by Mr. Luke Arnett, Attorney for company at time.'

"In spite of this apparent effort to get things back on a friendly and workable basis, matters went from bad to worse and culminated in the filing of this action on November 1, 1955, the determination of which requires findings of facts and the declaration of law applicable thereto.

## FINDINGS OF FACTS

"The Court finds that Logan County Building Stone Company, Inc., is a validly formed Arkansas Corporation and has been such since its incorporation in May of 1951. The stockholders and their shares are as follows:

H. Schwartz 19
M. Hardwicke 19
Pat Hardwicke 1
Theresa Schwartz 1

"Having found that it is a validly formed corporation it must follow that the corporation received something of value for its capital stock. Sec. 8, Art. 12 of the Arkansas Constitution of 1874 among other things provides that '. . . no corporation shall issue stocks or bonds except for money or property actually received or labor done . . .' Mr. Arnett, the attorney handling

the formalities of incorporation was well aware of the provisions of the law and testified positively that it was clearly understood that the 80 acres of land was to constitute the property received and to be valued at $1,000. He also testified positively that the deed was in proper form and was executed and delivered to the corporation by Mr. and Mrs. Schwartz and that in exchange therefor the stock was issued.

"The execution and delivery of the deed is a bitterly controverted matter, but a decision of this case requires a finding of fact on that issue and the court adopts the testimony of Mr. Arnett and finds that Mr. and Mrs. Schwartz executed and delivered the deed to the corporation.

"The Schwartzs offered no other explanation of what any of them paid or gave for their stock. Herman Schwartz has held himself out as the president of the corporation. The Corporation, under his management has done an extensive business, made substantial profits and has registered the 'Cherry Blend' name. Such conduct and circumstances, together with Mr. Arnett's direct testimony that the deed and conveyance of the land constituted the consideration for the issuance of the stock in the corporation leaves no alternative but to find that such deed was executed and delivered and that title to said land should be vested in the Corporation and that Mr. and Mrs. Herman Schwartz should be divested of such title. Nor can the Schwartzs be heard to contend that no consideration has been paid them. The stock in the corporation is valuable. They have received very substantial profits from the corporation based on their stock ownership. In the pipe line settlement in December of 1953, a very substantial sum was paid to the Schwartzs ($3,000) while $1,000 was being paid to the corporation. On the other hand, the Hardwickes cannot be heard to complain about the $3,000 overpayment to the Schwartzs because they knew of the settlement and acquiesced in it by sharing in the corporation profits in 1953 subsequent to the settlement and the years subsequent thereto. In addition, Mr. Hardwicke,

had full knowledge of the pipe line settlement when he and Mr. Schwartz made the settlement of account on June 18, 1955, and no reference or complaint was made concerning it at that time.

"The Court also finds that the corporation agreed to pay to the Schwartzs 25 cents per ton so long as it produces building stone from the tract. The 25 cents per ton provision was not written in the deed and there was never any official action taken by the corporation to be recorded in its minutes, but the proof is beyond cavil that the corporation was to pay the 25 cents per ton and the court finds that such provisions should be made a part of the order vesting title and be binding upon the corporation, its grantees, successors and assigns.

"The Court finds that Herman Schwartz at a time when he was president of the corporation and its active manager also was engaged in competitive stone selling ventures, but finds that there is no evidence in this case to warrant a finding that he was not entitled to be so engaged. At all times when Mr. Hardwicke was in charge of the business, certainly Mr. Schwartz was entitled to be in competitive business.

"However, since the registered name of 'Cherry Blend' is the registered trade name of the rock handled by the corporation, Schwartz should be restrained from marketing competitive stone as 'Cherry Blend' even though his competitive stone may be so similar to that marketed by the corporation as to be indistinguishable from it.

"Undoubtedly Mr. Schwartz has used the name 'Cherry Blend' in the past. But we must not lose sight of the fact that he was and now is the president of the corporation and that he and his wife own half the corporate stock. He was for many years the manager of the corporation's business. Under the evidence in this case the Court is unwilling to assess damages against Mr. Schwartz.

"Since this suit does not seek a dissolution of the corporation, the court makes no finding concerning that

aspect of the case, at the same time recognizing the absurdity that results when half the corporate stock is owned by one faction and an exact equal half is owned by the other — an impasse which could possibly result in inability to elect directors or conduct corporate affairs. Therefore, based on the evidence and happenings since the commencement of this action, the court finds that until some change is made in a legal manner the directors of the corporation have empowered Mort Hardwicke to conduct the corporate business in its accustomed manner and to keep a full, true and complete set of books from which an accurate accounting can be made.''

## CONCLUSIONS

''The Corporation is a validly existing Arkansas corporation.

''Title to the 80 acres in question shall be vested in the corporation and divested from the Schwartzs.

''The order vesting title shall contain a provision binding on the corporation, its grantees, assigns and successors requiring payment of 25 cents per ton on the rock quarried and marketed, which shall be payable to Herman Schwartz, his grantees, devisees, successors, heirs or assigns.

''Mort Hardwicke is hereby declared to be the presently acting manager of the corporation business of quarrying and marketing building stone and he is required to keep a full, true and complete set of books.

''Herman Schwartz is restrained from using the name 'Cherry Blend' in his competitive rock ventures.''

I. *The Direct Appeal.* It is well settled by our own cases, and the authorities generally, that the evidence required to prove and establish a lost deed must be clear, satisfactory and convincing, though it need not be undisputed. *McCulloch* v. *McCulloch,* 213 Ark. 1004, 214 S. W. 2d 209. In *Dillard* v. *Harden,* 197 Ark. 586, 124 S. W. 2d 10, we said it is sufficient if the testimony which the court credits and accepts as true shows clear-

ly, concisely and satisfactorily that the deed sought to be restored had in fact been executed and delivered. We have also said that the burden is upon one who claims under an alleged lost instrument to establish its execution, contents and loss by the same *quantum* of proof. *Slaughter* v. *Cornie Stave Company,* 172 Ark. 952, 291 S. W. 69.

The first and most difficult question is whether the proof tending to establish the execution, delivery, contents and loss of the alleged deed from appellants to the Logan County Building Stone Company, Inc., meets this test. In testing the appellants' earnest and able contention that it does not, due deference must be given to the findings and conclusions of the trial judge who heard and observed the witnesses as they gave their testimony.

As the chancellor indicated, the evidence was sharply conflicting and the testimony of some of the witnesses was indefinite and contradictory on some points. For instance, Judge Hardwicke first testified to the execution of the deed by appellants to the corporation but later stated that he did not actually see them sign the instrument. Also, the minutes of a meeting of stockholders dated May 5, 1951, which might have been the date of the alleged execution of the deed, made no mention of that fact. But the trial court credited and gave great weight to the testimony of Mr. Arnett. So do we. In a hotly contested case like this, it is refreshing to have the testimony of a witness who seems to enjoy the utmost respect and confidence of all parties to the litigation. Mr. Arnett has ably represented the corporation throughout its existence without favor or partiality to either group of stockholders. The appellants do not question his honesty or integrity but do insist that his memory was fallible because it was not in harmony with that of the appellants or Judge Hardwicke on some points and with the minutes which he kept. We find nothing vague, uncertain or indefinite in Mr. Arnett's testimony concerning the execution, delivery, contents or loss of the deed in question. We agree with the trial

court that such testimony was positive, straightforward, explicit, logical and credible. If there were the slightest motive or inclination on his part to tell anything other than the absolute truth, it is not reflected in this **record.**

On the question of delivery Mr. Arnett testified that after the deed which he prepared was signed by appellants it was delivered to Schwartz by him with directions to take it and have it acknowledged, but not to record it for a while; and that he (Arnett) later found the deed in the files of the corporation but did not notice whether it had been acknowledged. Subsequently the deed was missing from the files. As president of the corporation and then in active charge of its affairs, Mr. Schwartz was the proper party to accept the deed and we think the evidence sufficiently shows a valid delivery.

On the whole case we conclude that the execution, delivery and contents of the deed from the appellants to the corporation were shown by that clear, satisfactory and convincing testimony required to establish it as a lost instrument.

II. *The Cross-Appeal.* Appellees say the trial court erred in holding that Schwartz was not liable to the corporation for $3,000 of the $4,000 easement payment made by the pipe line company. In our opinion a preponderance of the evidence sustains the trial court's finding that appellees had full knowledge of the settlement and fully acquiesced therein by thereafter accepting statements of the accounts and sharing in the corporate profits without complaint concerning the settlement made by Schwartz with the pipe line company. There was evidence that Hardwicke knew about the settlement prior to and during the period that he admits receiving monthly statements of the corporate accounts without protesting the settlement in any way.

Practically the same situation is involved in appellees' further contention that the court erred in refusing to hold appellants liable for damages for selling stone from the Schwartz Brothers quarry as "Cherry Blend Stone." It was shown that Hardwicke not only had

knowledge of these sales of the "split" loads of Cherry Blend Stone but actually assisted in making them and shared in the profits without complaint. Moreover, appellees failed to establish the amount of any damages to which they might otherwise be entitled if they had not fully acquiesced in and agreed to said sales. There is a paucity of proof that appellants actually misappropriated any of the funds belonging to the corporation.

The decree is affirmed on both the direct appeal and the cross-appeal.